CHARLES W. SEYMOUR, CHARLES F. HOLLY, AND OTHERS, PLAINTIFFS IN ERROR, v. ALEXANDER STREET, DEFENDANT IN ERROR.

1. **Statute of Limitations**: MORTGAGE. A mortgage is not a "specialty" within the meaning of our statute of limitations.

2. ———. It was the intention of the legislature to give a creditor five full years in which to commence his action, and if, during that period, the right to proceed in our courts to reduce the claim to judgment is suspended by reason of the absence or concealment of the debtor, the period of such absence is not to be computed as any part of the time within which an action may be brought. *Blodgett v. Utley*, 4 Neb., 26, cited and approved.

3. ———. The words "usual place of residence" mean the place of abode at the time of service.

4. ———: ABSENCE. Where a man, having a wife and family, went to Colorado in the spring of 1861, and was elected and served as a member of the territorial legislature in the years 1862 and 1863, and in the years 1865 and 1866 held the office of judge of the district and supreme courts of that territory, his wife and a portion of his family continuing to reside at Nebraska City in this state; *held*, that the place of residence of his wife was not his usual place of residence during such absence.

5. THE FINDINGS OF A COURT, when substituted for a jury. are entitled to the same weight as the verdict of the latter.

6. WHERE A VERDICT or finding is *clearly wrong*, it should be set aside; but if there is only doubt as to its correctness it will not be disturbed.

7. **Action**: THE TRUSTEE OF AN EXPRESS TRUST may bring an action in his own name without joining the name of the assignor.

8. **Bankruptcy**: A DISCHARGE in bankruptcy has the same effect in law as payment of the debts, and such discharge cannot be assailed for fraud in a collateral proceeding.

9. **Practice**: TAKING STAY OF EXECUTION prior to the act of February 23, 1875, is not a waiver of the right to prosecute proceedings in error. *White v. Blum*, 4 Neb., 558, cited and approved.

THIS was a petition in error to reverse a judgment of the district court for Otoe county. It was an action brought to foreclose a mortgage given by Holly and wife to Alexander Majors on real property in Nebraska City, dated May 30, 1860, to secure a note for $4,000, given by Holly to Majors, and payable on or before the first day of August, 1861. The note and mortgage were given to secure the payment of freight for transporting a quartz mill and machinery from Nebraska City to Colorado Territory. Afterwards, on the 12th of June, 1860, Holly executed and delivered to Majors a chattel mortgage on the mill and machinery, as additional security for the payment of the note. On the 25th of January, 1861, Majors made an assignment of his property to Alexander Street for the benefit of his creditors, and Street brought this action to foreclose said mortgage, and against Seymour and others who claimed title to portions of the property mentioned therein. The Hollys answered admitting the execution of the note and mortgage sued on. They set up, however, that by agreement between Holly and Majors, the latter was to transport the mill and machinery not exceeding forty thousand pounds in weight, to such locality in Colorado as Holly should direct, not exceeding the distance from Nebraska City to Denver; that Holly should pay therefor at the rate of nine and one-half cents per pound; that when the actual weight of said machinery and the cost of transportation thereof, according to the price

stipulated, should be ascertained, if the amount should be less than the face of the note the deficiency should be credited as a payment thereon: that under this agreement the actual cost for transporting said mill and machinery was three thousand dollars and no more. They also allege that by delays and breakages Holly was damaged to the extent of fifteen hundred dollars; that Majors afterwards took possession of said mill and machinery under said chattel mortgage, and converted the same to his own use; and that by reason of the premises said note was fully paid off and discharged, surrendered and given up to be cancelled to the attorney Seymour. They also plead the statute of limitations, and that Majors had obtained a discharge in bankruptcy under the United States law of 1867. The district court found the issues in favor of Street and entered a decree accordingly. Further facts appear in the opinion.

*C. W. Seymour*, for plaintiffs in error.

*Shambaugh & Richardson*, for defendant in error.

MAXWELL, J.

Is a mortgage a specialty within the meaning of our statute of limitations?

A specialty is defined to be, "a writing *sealed* and delivered which is given as a security for the payment of a debt in which such debt is particularly specified." Bacon's Abr., *Obligation, A.* And, although in the body of the writing it is said that the parties have set their hands and seals, yet if the instrument be really sealed it is a specialty; and if it be not sealed it is not a specialty, although the parties in the body of the writing make mention of a seal. *Taylor v. Glaser*, 2 Sergt. & Rawle, 504. 2 Bouvier's Law Dic., 537. 2 Coke, 5, *a.* In *Stockwell v. Coleman*, 10 Ohio State, 40, it is held,

"that while the term specialty, in the strict use of the word, was regarded as only applicable to bonds, deeds or other instruments under seal, it afterward came to be used in a much more comprehensive sense.   The term specialty has long been used both in England and America in this more comprehensive sense as embracing debts upon recognizances, judgments, and decrees, and (in England certainly) debts upon statute."

No case has been referred to by the plaintiff in error holding that a note secured by a mortgage is a specialty, and I think no such case can be found.   In *Jackson v. Sackett*, 7 Wend., 94, and *Clark v. Figes*, 2 Starkie, 234, it was held, that although a promissory note was secured by mortgage, it remained a simple contract.

But it is urged that Holly's usual place of residence continued to be at Nebraska City.   The evidence clearly shows that he was a non-resident of this state from the year 1861 until the commencement of this action in September, 1869; he was twice elected a member of the territorial legislature of Colorado, and in the years 1865 and 1866 held the office of judge of the district and supreme court of that territory.   The fact that his wife remained in Nebraska City did not, under the circumstances in this case, make that place his *usual place of residence*.   In *Blodgett v. Utley*, 4 Neb., 29, this court held that "it was the intention of the legislature to give the creditor five full years in which to commence his action, and if during that period the right to proceed in our courts to reduce the claim to judgment is suspended by reason of the absence or concealment of the debtor, the period of *such* absence shall not be computed as any part of the time within which an action may be brought." It is also held that the words *usual place of residence* mean the place of abode at the time of service of a summons.   Section 17 of the code of civil procedure, Revised Statutes of 1866, which took effect September 1, 1866,

provides that, "the absence from the territory, death, or other disability of a non-resident, save the cases mentioned in this section, shall not operate to extend the period within which actions *in rem* shall be commenced by and against such non-resident or his representative." This provision was evidently intended by the legislature to include mortgages. But it can only operate prospectively, and but little more than four years had elapsed from the time this provision took effect until this action was commenced. It is evident, therefore, that the action is not barred by the statute of limitations.

A more serious objection, however, arises on the sufficiency of the evidence to sustain the judgment of the court below. The rule is well settled that the findings of a court when substituted for a jury are entitled to the same weight as the verdict of the latter; and a verdict will not be set aside on the ground of an erroneous finding, unless it is clear that such is the case. *Merrick v. Boury*, 4 Ohio State, 60. And a mere difference of opinion between the court and jury will not warrant the former in setting aside the finding of the latter. *McGatrick v. Wason*, 4 Ohio State, 566. The correct rule appears to be that if the verdict or finding is clearly wrong, it should be set aside; but if we only doubt its correctness it will not be disturbed.

In this case it appears that in addition to the mortgage on the real estate in controversy, Holly executed a chattel mortgage on the mill and machinery as additional security on the note in question. It also appears that in April, 1862, an action was commenced by the plaintiff in the court below in the district court of Boulder county, Colorado, to foreclose the chattel mortgage, and that under the proceedings in the case Street obtained possession of the mortgaged property, which is shown to have been of the value of $9,500.00. The plaintiff in the court below contends that this suit was compromised on the

payment by Holly of the sum of $1,250.00, and the mortgage released; and one Litchfield testified that he acted as the agent of Street in the transaction, and that such disposition was made of the case. Holly testified postively that he knew nothing about the suit; that no compromise was ever made; and that Street, through Litchfield, sold the mortgaged property to one Rounds, of Black Hawk Point, and retained the entire proceeds. There is nothing in the record, except the naked, unsupported statement of Litchfield, to show that the mortgage was released, while it is clearly shown that the suit was not dismissed. And there is nothing in the records of the district court, so far as appears, to show that service was had on Holly, or that a compromise was effected; nor is any reason given why the records of the district court fail to show that the case has been compromised or dismissed.

It being conceded that the plaintiff in the court below obtained possession of the property under the mortgage, it devolves on him to show by a preponderance of testimony that the property in question was returned to Holly and the mortgage released. But the proof entirely fails, in my opinion, to establish the fact that the mortgage was released and the mortgaged property returned to Holly. It is somewhat remarkable that if the sum of $1,250.00 was actually paid, it was not indorsed on the note, or at least a receipt given for it; but nothing of the kind is claimed. The evidence as to the loss of the note is not sufficient, in a case of this kind, to permit evidence of its contents to be given on the trial. For these reasons the judgment of the district court must be reversed.

But, while the statute of limitations of this state has not run against the claim, it is a very suspicious circumstance, that no action was brought to foreclose the mortgage, which is the foundation of this suit, for more than eight years after the note became due. This is not the

case of a creditor extending the time of payment to a debtor. Street was appointed trustee, in January, 1861, for the express purpose of *collecting the debts* and converting the property placed in his hands into money, for the purpose of paying debts owing by Majors. The trust deed contains the following provisions: "This conveyance and transfer, however, is made in trust for the following purposes, to-wit: Whereas, the said Majors of the first part, is indebted and bound in his own individual rights, and as a member of the firm of Russell, Majors and Waddell, to divers and sundry persons, and co-partnership of persons, and corporations, in divers and sundry sums of money; said indebtedness and obligations being and arising upon accounts, notes, bills, etc., upon which said Majors is bound as maker, drawer, indorser, acceptor, or otherwise, a full list of said indebtedness and obligations being hereto annexed and hereby referred to, and made a part of this conveyance, as showing the debts and liabilities intended hereby to be secured. Now, if the said Majors shall pay, or cause to be paid, each and all of the aforesaid debts and obligations, and every part thereof, together with all interest thereon, on or before the first day of November next, then this conveyance shall be void, and the property hereby conveyed shall be released at the cost of the said party of the first part and re-delivered and re-transferred to said Majors, his assigns or legal representatives. But, if the said Majors shall not well and truly pay, or cause to be paid, each and all of the aforesaid debts, and every part thereof, together with all interest thereon, on or before the first day of November, 1861, then this conveyance shall remain in full force and effect; and, in the event of such default, the said Street, trustee as aforesaid, may proceed to sell, either at public or private sale, for cash or on reasonable credit, any, and all, or so much as may be necessary, of the property hereinbefore

described and conveyed, at such place and places, and at such time and times, as said trustee may deem best; and, if sold publicly, he shall give such notice of the time, and place, and terms of sale as he may deem reasonable under the circumstances. And it is further provided, that said Street of the second part, shall, at once, after the execution and delivery hereof, proceed to take possession of all the property and debts hereby conveyed, and to collect the debts hereby transferred, with as little delay as practicable. * * * And, after paying the expenses for the creation and execution of this trust, he shall pay off whatever shall remain in arrears, unpaid on the debts and liabilities herein secured, provided the funds arising from this trust be sufficient therefor; and, if not sufficient, then *pro rata* on said debts; and the remainder, if anything, whether of money, property, or choses in action, shall be returned to said Majors, his assigns or legal representatives."

In the year 1867, Alexander Majors filed his petition in the United States district court for the state of Nebraska, praying that he might be adjudged a bankrupt within the provisions of the act of March 2, 1867. In the schedule of assets, no mention is made of any indebtedness from Holly to Majors. On the twenty-fifth day of May, 1868, he received a certificate of final discharge from all debts provable under the act, which existed on the thirteenth day of September, 1867. Section 19, of the act of March 2, 1867, requires the petitioner to annex a schedule, verified by oath, to his petition, which shall contain: " a full and true statement of all his debts, and, as far as possible, to whom due, with the place of residence of each creditor, if known to the debtor, and if not known, the fact to be so stated, and the sum due each creditor; also the nature of each debt or demand, whether founded on written security, obligation or otherwise, and also, the true cause and con-

sideration of such indebtedness in each case, and the place where such indebtedness accrued; and a statement of any existing mortgage, pledge, lien, judgment, or other collateral, or other security, given for the payment of the same; and shall also annex to his petition an accurate inventory, verified in like manner, of all his estate, both real and personal, assignable under this act, describing the same, and stating where it is situated, and whether there are any, and if so, what, incumbrances thereon."

The trustee of an express trust may bring an action in his own name, without joining the name of the assignor; but the trust in this case was to apply the property of Majors to the payment of his debts. On payment of the debts the trust should cease and determine; and the property remaining in the hands of the trustee should be re-assigned to Majors. A discharge under the bankrupt law operates in discharging the bankrupt from all debts provable against his estate, which existed at the time of filing the petition. The discharge, therefore, has the same effect as payment of the debts; and the trusteeship of Street ceased at that time. The law requires actions to be prosecuted in the name of the real party in interest. It is clear, that whatever property, or choses in action, remained in the hands of Street at the time of the discharge belonged to Majors. If he has made a fraudulent concealment of his property, it may afford grounds to impeach and set aside the discharge; but it cannot be assailed in a collateral proceeding. It is apparent, therefore, that the action should be brought in the name of Majors, unless it should be made to appear, that these debts survived the discharge, and are to be paid out of the property conveyed to Street in trust, of which there is no proof.

Objection is made by the defendant in error, that the plaintiff in error, having taken a stay of execution, has

waived the errors, if any existed; and is thereby precluded from prosecuting a petition in error in this court. This question arose in *White v. Blum*, 4 Neb., 558, and the court held, that the taking of a stay of execution, prior to the act of February 23, 1875, is not a waiver of the right to prosecute proceedings in error in the supreme court.

It is unnecessary to review the case farther. The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

GANTT, J., having been of counsel in the court below, did not sit.