*Mason & Whedon,* for Fisher.

*Lamb, Billingsley & Lambertson, contra.*

---

J. W. MATTHEWSON AND WIFE, PLAINTIFFS IN ERROR,
v. A. D. BURR, DEFENDANT IN ERROR.

1. **Practice**: NEW TRIAL. When the evidence is palpably insufficient to sustain the verdict it should be set aside, and a new trial granted.

2. **Evidence**: IMPEACHMENT OF WITNESS. A witness may be impeached by bringing other witnesses to swear that his reputation for truth is bad. In this mode of impeachment, however, it is not competent to show what two or three persons only may think or say concerning him, but the inquiry should be confined to the general estimation in which he is held by his neighbors and acquaintances.

3. **Practice**: INSTRUCTIONS; NOT TO BE REFUSED WHEN. When an instruction is requested which states the law correctly in any possible view of the evidence it ought not to be refused.

4. ———: ———. SHOULD BE CLEAR AND DEFINITE. If an instruction containing several distinct propositions is so confused and indefinite, as to some of them, as to convey no clear idea of what is intended, the whole instruction may be properly rejected.

5. ———: ———. SHOULD NOT TEND TO PREJUDICE. If an instruction be given not called for by the evidence, and which had a direct tendency to prejudice the party complaining, a new trial will be granted.

ERROR from the district court of Lancaster county. Burr, the defendant in error, brought suit for the foreclosure of a mortgage, executed by plaintiffs in error, November 1, 1871, to W. F. Chapin upon certain real

estate to secure a note of J. W. Matthewson for $250, due sixty days from date. The petition alleged the loss of the note and the assignment of the debt and mortgage to Burr. Matthewson and wife pleaded payment of the note in full to Chapin, the payee, in March, 1872, and denied the assignment to and ownership of plaintiff of the cause of action. There was a trial before POUND, J., and a jury. Verdict in favor of Burr. Judgment for $402.66. Matthewson and wife bring the cause here by petition in error. The evidence upon the trial below, which was very conflicting, is too voluminous for insertion here. Sufficient appears in the opinion for an understanding of the points decided by the court.

*E. F. Runyan, N. S. Scott,* and *H. H. Blodgett,* for plaintiffs in error.

The amount paid by Matthewson to Chapin—a horse valued at $90 and afterwards $150 in cash, the law would appropriate to the payment of the note sued on, there being no other debts due. *Baker v. Stackpoole,* 9 Cow., 435. It cannot be holden as a deposit. Application cannot be made on a debt not due. Id. *Worthley v. Emerson,* 116 Mass., 374. *Allen v. Brown,* 39 Iowa, 330. *Bank of Muskingum v. Carpenter,* 7 Ohio, 21.

The evidence of J. W. Matthewson and P. E. Matthewson, and W. F. Chapin each state facts, which constitute payment in full of the note, and as there is no other evidence in the case, there is no evidence to support the verdict of the jury—and a verdict clearly and manifestly against the weight of evidence should be set aside—7 Mass., 261. 13 Mass., 507. 4 Conn., 102. 12 Conn., 487, 329. 3 Blackf., 305. And if substantial justice has not been done, the verdict will be set aside. 12 N. H., 171. 16 Maine, 200. It is almost unnecessary to comment upon the instructions which the court refused to

314 SUPREME COURT OF NEBRASKA,

give, and which were offered by plaintiffs in error. The court certainly erred in refusing to give them to the jury. See authorities above cited.

*Webster & Burr*, for defendant in error.

The case to the jury turned upon the credibility of conflicting evidence; and the testimony of the defendants as to time and place could not possibly have been true; also, Matthewson's truth and veracity were impeached by his neighbors Sudduth, Jennings, and Denham; and in such case the verdict will not be set aside, even though the preponderance seems to be against the verdict. *McGutrick v. Wason*, 4 Ohio St., 566. *Rudman v. Rudman*, 5 Ind., 63. *Roberts v. Nodwift*, 8 Ind., 339. *Keuhn v. Wilson*, 13 Wis., 104. *Breese v.. State*, 12 Ohio St., 146. *Blackburn v. Ostrander*, 5 Neb.. 219.

The sale of the horse was not payment. Matthewson does not so claim it nor did Chapin so receive it. It was to be so applied if the balance of the note was paid; and when it was necessary for Matthewson to use Chapin's credit as a means of raising money at the bank, he agreed to give a new mortgage for his indemnity, but finally said the old note and mortgage might stand in force till the new note was paid.

The result was (as Chapin had that note to pay, and had received but $90 by the horse, and $150 of the new note) that he was a loser of $60 by that transaction, and counsel would have the court treat this as payment.

But for the last argument the value of the horse might properly be availed of as a set-off. The law imposes upon parties no inflexible rule of application of payments. It presumes the earliest payment is to liquidate the oldest or the more onerous obligation. But the debtor may direct appropriation. In case he does not, the creditor may; and doubtless parties may agree that

an account or money shall be held as a deposit or security collateral to indemnify a surety. It was an agreement between parties competent to contract, and is valid. The instructions refused, assignments one and two, assumed the contrary.

It is to be specially noted that there is no other creditor whose rights are in question. Most cases cited by plaintiffs in error specially depend upon the rights of other creditors. Clearly, by Matthewson's own admissions, the value of the horse was not appropriated toward the payment of the mortgage note. He says the mortgage note was paid in money. The jury found otherwise. Chapin says it was agreed that the amounts should only apply upon the mortgage note when Matthewson paid off the discounted note. There was no appropriation to the mortgage note, as the jury found. Then, even admitting there was no appropriation to the discounted note, yet the law would appropriate it according to its notions of justice. *U. S. v. Kirkpatrick*, 9 Wheat., 737.

LAKE, CH. J.

I. The first of the several errors alleged in the assignment to which I will direct my attention is that which charges the verdict to be against the weight of the evidence. And the well-established rule by which we must be governed in the determination of this question is, that the evidence must be palpably insufficient to sustain the verdict or it will not be disturbed. It is not enough that the court would have found differently, but the finding of the jury must be clearly wrong. *Seymour v. Street*, 5 Neb., 85. *The A. & N. R. R. Co., v. Washburn, et al.*, Id. 117. With this rule in view how stands the case?

In considering this point it may be best at the outset

to refer to the attempted impeachment of the witness J. W. Matthewson in order to determine what weight, if any, should be given to his testimony. The mode of impeachment resorted to was by bringing witnesses to swear that his reputation for truth was bad. The first witness called upon this point was Patrick H. Sudduth, who testified that he knew Matthewson some five or six years before when he lived for a short time in his neighborhood, and at that time his reputation "was not very good in the neighborhood, we did not think him a very truthful or honorable man."

But on his cross examination it was shown very clearly that he was a prejudiced witness, and that he based his conclusion that Matthewson's reputation was not good chiefly on the ground that he had borrowed some sacks, "and promised to return them, but he never did."

The next witness was J. W. Denham who had had a difficulty with Matthewson about a wagon which he had borrowed only for a single day, but "did not bring it back for a week." It was on this ground, mainly, that he had formed an unfavorable opinion as to Matthewson's truthfulness.

The only other impeaching witness called was H. S. Jennings, who testified that he "thought" he knew Matthewson's reputation, and that it was bad. His judgment was formed, so far as could be ascertained by a pretty vigorous cross-examination, on the statement of one or two persons who had been engaged in some sort of controversy or litigation with Matthewson and who were at enmity with him. This is the whole of the impeaching testimony, and when taken in connection with the conceded fact that Matthewson had lived in the city of Lincoln from some time in 1869 until 1874, and was quite extensively known, must be considered as very meagre indeed, and falls far short of showing what his *general* reputation actually was in the community where he lived.

In this mode of impeachment it is not competent to show what two or three persons only may think or say concerning the witness, but the inquiry must be confined to the general estimation in which he is held by his neighbors and acquaintances. Nothing short of this will answer.

But, in addition to the valueless character of this testimony, an equal number of witnesses were called on the other side who knew Matthewson well, two of whom testified that his reputation for truth was good; and the other that he had never heard it called in question, which is evidence that it was good. *State v. See*, 22 Minn., 407. Under this condition of the testimony we must hold that the attempted impeachment of Matthewson was a failure, and that his deposition must be considered, and given due weight in the decision of the case.

The main subject of controversy was as to the alleged payment of the note on which the action was brought. This note was executed and delivered to W. F. Chapin, the payee, on the first of November, 1871, payable in sixty days, and, together with the mortgage given to secure it, was assigned to the defendant in error on the thirteenth day of December, 1875. It is declared upon as a lost note, and Chapin testifies that he did not know what had become of it—that he had not seen it since he deposited it in the bank about the time of its date.

As a defense, Matthewson answered that he had paid the note in full to Chapin in March, 1872; and in support of this defense, he testified that on or about the fourth of March, 1872, he paid " W. F. Chapin, the full amount of the note." He further testified that Chapin then told him " that he would release the security, and give him the note as soon as convenient." That some time afterwards Chapin did surrender the note, and his impression was that he " then and there destroyed it."

Phebe E. Matthewson, the wife of J. W. Matthewson, testified that Chapin stated in her presence " that he had received in all $250 and interest, in full satisfaction of the $250.00 note, and that it was then fully paid." That Chapin at this,time produced the note, " and gave it to Mr. Matthewson, and he destroyed it." That Chapin then promised her "to release the mortgage security as soon as he could go to the records and do so." This witness also detailed with much particularity another conversation with Chapin which she thought "took place on the same day that Mr. Matthewson paid Mr. Chapin the two hundred and fifty dollars and interest. It was either on that day or the following one. It took place at our rooms on the corner of N and 11th streets, Lincoln, Nebraska. Mr. Chapin came there and enquired for Mr. Matthewson. I told him he was out but would return soon. Mr. Chapin walked in and waited until Mr. Matthewson came back. Mr. Chapin said he wanted to see Mr. Matthewson to rectify a mistake which he said had been made in calculating interest on the $250.00. I asked him if Mr. Matthewson had not settled the note in full, and Mr. Chapin repeated that Mr. Matthewson had settled the $250.00 all up."

Of this testimony of Matthewson himself there is no direct contradiction, but only a possible inference that as to the fact of payment it may not be strictly true. But as to the statements of both Matthewson and his wife that Chapin acknowledged the note was paid in full, that it was delivered up, and that he agreed to cancel the mortgage, there is not the least particle of conflicting testimony. The only effort made to counteract the effect of the positive testimony of these two witnesses as to the surrender of the note by Chapin was to prove that at the time of the alleged surrender Chapin was not in the occupancy of the land office, the place where they testified it took place. However, if what these two witnesses

stated took place at the land office did not take place
at all, it would have been very easy for Mr. Chapin to
have said so when on the witness stand, and the fact
that he did not, must he regarded as an admission that
it all actually occurred.   Besides, it is not improbable
that Matthewson and his wife may have been mistaken
as to the particular room in which the alleged conversa-
tion was had, for the witness Tucker, the successor of
Chapin in the land office, who was called to prove that
Chapin was not occupying the office at the time fixed
upon by the Matthewsons, says that Chapin " *remained
in the building, but not in the office,*" after he took pos-
session.   A very careful examination leads us to the con-
clusion that the verdict is very clearly against the weight
of the evidence and should be set aside.   This is clear ac-
cording to Chapin's own testimony, for he says Matthew-
son let him have a horse about the first of March, 1872,
at the agreed price of $90.00, to apply on the $250.00
note, and that on or about the eighteenth of the follow-
ing June $150.00 more was paid him from money ob-
tained by Matthewson from the Lancaster county bank.
Aside from the interest that had accrued after the ma-
turity of the note these two credits would leave due to
Chapin at the time of the last payment only ten dollars,
while by the verdict rendered no credit whatever was
allowed.

II.   As before stated the single issue made by the
pleadings is as to whether the note, upon which the ac-
tion was brought, was paid.   The testimony as to the
amount paid on this note and the mode of payment is
conflicting, Matthewson claiming in his testimony that
on the fourth day of March, 1872, he borrowed three hun-
dred dollars from the Lancaster County Bank, out of
which he paid the two hundred and fifty dollar note
in full, and that the price of the horse, and the one hun-

dred and fifty dollars paid Chapin in June, 1872, were to be credited on the $300 bank note, on which Chapin was surety, and which he had assumed to pay by having it transferred to his individual account at the bank.    On the other hand Chapin swears, as before shown, that the price of the horse and the one hundred and fifty dollars were to be credited on the first note, and that he had received nothing on account of his liability and payment of the three hundred dollar note.    This being the condition of the case the plaintiff in error requested the court to instruct the jury "that it is not material in this case whether the defendant Matthewson paid to the witness Chapin the note for three hundred dollars made to the Lancaster County Bank or not; that if that note in fact is not paid it is a cause of action by and of itself, and that indebtedness cannot be substituted for or made to sustain the action now on trial."

We think this instruction stated the law applicable to this case correctly. and ought to have been given to the jury.    If there were anything due to Chapin by reason of his having . paid the three hundred dollar note, that was a matter of no concern to the assignee of the two hundred and fifty dollar note and mortgage.    His right to maintain this action depends upon this particular note not having been paid.    The tranactions concerning the three hundred dollar note properly figured in the case only as they tended to prove or disprove the alleged payment of the particular note in controversy in this action.    The assignment to Burr covered only the two hundred and fifty dollar note and mortgage.    It was not even pretended that any right growing out of the three hundred dollar note was included.    If Chapin ever had any such right he still retained it and could enforce it at his pleasure.

As to the second instruction, which the court refused to give, it may be said, that by it two distinct proposi-

tions were evidently intended to be stated. The first of these propositions stated the law applicable to the testimony correctly, while the second is so confused and indefinite as to convey no clear idea of what was intended. In such case it is not error to reject the entire instruction.

It is complained also that the court erred in giving this instruction, viz: "If you believe from the evidence that the agreement between Chapin and Matthewson at the time of the execution of said note to the Lancaster County Bank was that the note and mortgage sued on were to remain in full force, unless said Matthewson should pay said note executed to said bank, and that Matthewson failed to pay the same, and Chapin himself paid it, then you are instructed that the note sued on was not paid by the receipt by Chapin of the one hundred and fifty dollars."

Under the issue and the testimony this instruction was not warranted, and had a direct tendency to prejudice the plaintiffs in error. Chapin, the sole witness on whom the defendant in error relied, testified that: "It was understood at the time I bought the horse it was going to be applied on the two hundred and fifty dollar note, when the balance was paid, and I got hold of the note myself." And again, when he received the one hundred and fifty dollars, that he "would let the old mortgage and note stand; and when he took up this three hundred dollar note that would square up all the transactions." Now, conceding all this to be strictly true, it does not follow necessarily that the price of the horse was not to go as a credit on the two hundred and fifty dollar note when he got possession of it, he having, as it appeared, deposited it in the bank as a collateral security for the payment of a note of his own. There is nothing in Chapin's testimony from which it can be inferred that either the price of the horse or the one hundred

and fifty dollars was to be applied to anything else than this particular note. There was no agreement that the mortgage was to stand as a security for anything except the two hundred and fifty dollar note therein described.

For these reasons the judgment of the court below is reversed and a new trial awarded.

REVERSED AND REMANDED.