## DRAKE v. KINGSBAKER.

1. **Intoxicating Liquors:** UNLAWFUL SALE IN LEASED BUILDING: GOOD FAITH OF LESSOR: LIABILITY.   Where appellant leased his building for a lawful purpose, and was careful to provide in the lease for an almost immediate vacation of the building by the lessee in case it should be used for an unlawful purpose, and the lessee was promptly removed upon notice to appellant's attorney that he was selling liquors in the building contrary to law,—the appellant himself being out of the state and having no knowledge of the facts,—and there was no evidence of any bad faith whatever on the part of appellant, *held* that, in an action begun while the lessee was still in the building, but tried some weeks after he had been removed, and while the building was not used for any purpose, to restrain the sale of intoxicating liquors in the building, no decree should have been entered against appellant, and no judgment for the costs of the case should have been rendered against him.   (*Martin v. Blattner*, 68 Iowa, 286, and *Judge v. Kribs*, 71 Id., 183, distinguished.)

*Appeal from Wapello District Court.*

FRIDAY, OCTOBER 7.

THIS is an action in equity for an injunction to restrain the appellant, and other parties who were made defendants, from selling intoxicating liquors upon certain premises

owned by the appellant. A hearing was had, which resulted in a decree against all of the defendants, at their costs. B. Kingsbaker appeals.

*Williams & Jacques*, for appellant.

*W. S. Coen*, for appellee.

ROTHROCK, J.—The facts in the case are not the subject of dispute. It appears that the appellant is the owner of a certain building in the city of Ottumwa. On the 9th day of December, 1886, he leased the first story of the building to Thomas Egan. The lease was in writing, and contained a stipulation in these words : "The second party [Egan] covenants that he will use said premises as a restaurant, and that he specially will not use said premises for unlawful purposes ; and it is further agreed that, if said building shall be used for unlawful purposes, the first party may put second party out on giving three days' notice in writing." Soon after making the lease, appellant left Ottumwa, and went to the state of California. He left no agent at Ottumwa. This suit was commenced on the 24th day of December, 1886. Notice of the suit was served on the appellant's brother on that day, who immediately called on appellant's attorney, and on the same day a notice was served on Egan demanding that he quit the premises within three days, as provided in his lease ; and on the 1st day of January, 1887, Egan left said premises, and surrendered the possession to appellant, and said building has not been used since that time for any purpose. The evidence showing the unlawful sales of intoxicating liquors, and upon which the decree adjudging the defendants guilty of keeping a nuisance was based, was as follows:

E. L. Monroe, a witness for the plaintiff, testified that he " knew a two-story brick building on south-west side Green street, Pickwick. Was in there 23d December, 1886. I

purchased a drink of whisky and half a pint of whisky there. There was a new pine bar in there, and a partition built across it; a few chairs. They had a bottle in their inside coat pocket, and when I called for a drink they pulled it out, and gave me a drink. They had common whisky glasses. When I got the half pint they both went down in their pockets. The building was No. 827. *Cross-Examination.* Don't know either of the men I got it of. Didn't see any table. They had a few boxes of cigars, and a few packages of smoking tobacco is all they had in sight for sale. Only liquor I saw came out of men's pockets. Don't know the number of the lot, nor whether first or second brick building. *Redirect-Examination.* If I remember right, it was 827; may have been 829. *Recross-Examination.* 829 is the number on my memorandum. I worked this case up for pay, and get pay if I am successful; and, if not, don't get anything."

This evidence was sufficient to authorize a decree against Egan. But it appears from the evidence that appellant, who was the owner of the building, had no knowledge that his building was being used for any unlawful purpose. He leased it for a lawful purpose, and was careful to provide for an almost immediate vacation of the building by Egan in case it should be used for unlawful purposes. There is no evidence authorizing the conclusion that the appellant acted in bad faith. The whole record, including the prompt and effective efforts made to put Egan out of possession of the property, shows that the appellant had neither purpose nor intent that his property should be used as a saloon. He complains because he is by the decree required to pay the costs of the action, including an attorney's fee of $25.

The cause was tried some six weeks after the appellant had put Egan out of his property, and no pretense is made that the nuisance existed after Egan surrendered the possession. This is an equity case triable anew in this court, and it is our duty to inquire whether any decree should have been

entered against the appellant, or costs adjudged against him.

We are cited to the case of *Martin v. Blattner*, 68 Iowa, 286, and *Judge v. Kribs*, 71 Id., 183. In the first named case, Gibbs leased his property for a term of three years. He made no claim in his answer that he leased the property for lawful purposes. He undertook to defend the action upon the ground that the statute under which the proceedings were had is in conflict with the constitution of the United States ; and, after a decree against him, he appealed to this court, and insisted on his defense, and never abandoned it until a petition for rehearing was overruled. In the case of *Judge v. Kribs*, the defendant was an open violator of the law. He was not the owner of the building. He was the keeper of the saloon. He claimed that he had " reformed," and quit the business, after the suit was commenced. This court did not believe, from the evidence, that his " reformation " was genuine.

In the case at bar, the appellant was absent from the state, and had no knowledge that Egan was keeping a saloon in his building. As soon as his brother learned that the charge was made, immediate action was taken, and Egan was removed, with his whisky bottles in his pocket, as we suppose. We do not think that any decree or judgment should have been entered against the defendant Kingsbaker. The object of the law is to suppress and break up liquor nuisances ; and where an owner of property, as soon as he learns that his building is being used for illegal purposes, succeeds, in good faith, in abating the nuisance within a few days, as in this case, he ought not to be liable for anything.

It will be understood that we determine this case upon its peculiar facts. If the defendant had been in position to have acquired a knowledge that his building was being used for unlawful purposes, or if it had been kept as a nuisance for such time as to charge him with knowledge, or if, as in the case of *Martin v. Blattner*, he had attempted to justify the

keeping of the nuisance, or if there had been any showing of bad faith on his part, there might be cause for the decree and judgment against him.

Our conclusion is that the decree and judgment is not supported by the evidence, and that it should be

REVERSED.