STATE OF IOWA ex rel. VERNON R. SEEBURGER, Appellee, v.
CHARLES PICKETT et al., Appellees; CENTRAL REALTY
COMPANY, Appellant.

**INTOXICATING LIQUORS:** Mulct Tax—Evidence of Knowledge. A
1   mulct tax, attorney fees, and costs may not be assessed against property on testimony which simply tends to show (1) ownership of the property and (2) that, among a comparatively small class of people of

the community, the place had the general reputation of being a place for the unlawful use and sale of intoxicating liquors.

**INTOXICATING LIQUORS:** Nuisance—Abatement—Knowledge of
2 **Owner.** The complete abatement of an intoxicating liquor nuisance is mandatory on the court, irrespective of the knowledge of the existence of the nuisance on the part of the owner of the property.

**Headnote 1:** 33 C. J. pp. 699 (Anno.), 700, 701. **Headnote 2:** 33 C. J. p. 699 (Anno.)

**Headnote 2:** 10 A. L. R. 1556; 15 R. C. L. 406.

*Appeal from Polk District Court.*—JOHN FLETCHER, Judge.

NOVEMBER 16, 1926.

REHEARING DENIED JANUARY 22, 1927.

Action for a permanent injunction against the defendants to abate a liquor nuisance. The district court granted the prayer of the petition, made an order for a permanent injunction and abating the nuisance, and assessed a mulct tax of $600 against the property. The Central Realty Company appeals from the order assessing the mulct tax. —*Reversed.*

*H. L. Bump*, for appellant.

*Vernon R. Seeburger*, County Attorney, and *C. I. McNutt*, for appellee.

ALBERT, J.—The property in controversy here, designated in the record as 610 High Street, Des Moines, Iowa, was owned by the Central Realty Company. One Pickett had a lease on the same for restaurant purposes. A search by the officers on the 20th day of April, 1925, resulted in their finding about five ounces of alcohol in an individual teapot on a shelf in the kitchen. On the 21st day of April following, the petition herein was filed.

1. INTOXICATING
LIQUORS: mulct
tax: evidence
of knowledge.

Evidence is introduced in the case tending to show that the liquor thus seized was not the property of Pickett, the tenant, but belonged to one John Andrews, who was in the employ of Pickett. There is testimony by two other witnesses that, on the

9th or 10th day of May, they bought intoxicating liquor in the place in controversy from Pickett himself.

As stated above, an injunction was granted, an order of abatement made, and a mulct tax of $600 assessed against all parties, and also against the property described. Pickett and Andrews do not appeal. The Central Realty Company appeals from so much of the decree as assessed the mulct tax and costs against the company and the property described.

The petition filed herein does not allege, as against the Central Realty Company, that they knew, or ought in reason to have known, of the nuisance. Section 2051, Code of 1924, provides as follows:

"When a permanent injunction shall issue against any person for maintaining a nuisance as herein defined or against any owner or agent of the building kept or used for the purposes prohibited by this title, a tax shall be imposed upon said building and upon the ground upon which the same is located, and against the persons maintaining said nuisance and against the owner or agent of said premises, when they knew, or ought in reason to have known, of said nuisance."

As an aid to this section of the statute, Section 2053 was enacted, reading as follows:

"On the issue whether a party knew or ought to have known of such nuisance, evidence of the general reputation of the place shall be admissible."

It is around these two sections of the statute that the questions urged herein revolve.

The evidence in the case is wholly silent on the question of actual knowledge on the part of the Central Realty Company as to this nuisance. The question is whether, under the evidence, they "ought in reason to have known of said nuisance." To sustain this provision of the statute, the State offered testimony which it is claimed comes within the provision of Section 2053, above quoted. This term "mulct tax" first made its appearance in the law of this state in Chapter 62, Acts of the Twenty-fifth General Assembly. When the constitutional amendment prohibiting the sale of intoxicating liquors in this state was held unconstitutional, in the case of *Koehler & Lange v. Hill*, 60 Iowa 543, the liquor question again then became subject to statutory regulation, and various statutes were passed, to make

it effective. As a culmination of those years of experience, the twenty-fifth general assembly passed what is generally called the "Mulct Law," which recognized the saloon as an existing institution, under certain conditions; and while we have always hesitated to call it a "license law," it in effect amounts to that. Later, the permissive features of that law were repealed; but the provision as to the mulct law was allowed to remain, and was still left to apply to the unlawful sale of intoxicating liquors. The legislature has included certain other matters which are looked upon as public nuisances; but through all this legislation one thought has run, and that is that the owner of property who is not himself engaged in the unlawful sale of liquor cannot have charged against himself or his property a tax of this character when he does not know of the existence of the nuisance, or such nuisance is not such that he ought in reason to be held to know of its existence.

We have consistently sustained this drastic legislation in all its terms and phases; but such legislation always carries with it a danger which must be carefully watched, else, in a zealous attempt to enforce such legislation, the constitutional rights of the owner to possess and hold property are invaded.

The above quoted statutes in effect hold that the lessor of property and the property are to be subjected to this tax where the lessor knew, or ought to have known, of the existence of the nuisance. No property owner can shut his eyes to things which do actually exist, and by a simple denial evade the penalty of this statute. On the other hand, when the existence of a nuisance is such that it is generally known and reputed in the community to be a place where liquor is unlawfully kept or sold, the law does not permit the owner or property to escape the consequences.

We turn now to the evidence in the case. The claim of the State is not that there was any actual knowledge on the part of the owners of this property of the existence of the nuisance, but that its general reputation was such in the community that the owner ought in reason to be held to have known it, and therefore its liability. The evidence in the case comes wholly from members of the police department of the city of Des Moines, and also members of the Federal prohibition department. We say this, not by way of criticism of these officers in any way, but by

reason of the character of testimony which they give. A police officer is as competent to testify to the general reputation of a place, if he knows such reputation, as any other person.

What is a general reputation, within the meaning of this section of the statute?

Character and reputation, briefly stated, are distinguishable, in that character refers to what a person actually is, while reputation is what is said of him by his neighbors. *State v. Prizer*, 49 Iowa 531; 22 Corpus Juris 470. A general reputation refers to what is said of a person or place generally in the community. It cannot be proven by the statement of one or two individuals, but must be such as is generally current in the community. *Matthewson v. Burr*, 6 Neb. 312; *Carter v. Commonwealth*, 2 Va. Cas. 169; 22 Corpus Juris 479, Section 574. It does not necessarily have to be a matter of discussion, because we have repeatedly held that the best evidence of good reputation is that nothing has ever been said or heard in the community about such a person or place. ''The best reputation is the one least talked about.'' On the other hand, to establish a bad reputation, the subject of reputation must, of necessity, have been discussed, and must have been discussed generally in the community.

These witnesses, with one or two exceptions, in answer to the stereotyped question of whether or not they knew the reputation of this man Pickett and his place, answered that they did, and that it was bad; but the cross-examination of these men develops the fact that they are simply testifying to such reputation as existed among themselves, as officers, and not what was said generally in the community. In other words, the fact that among these officers it was generally talked and understood that Pickett was running this place as a place where liquor was unlawfully sold, without more, does not measure up to the requirements of the law in such matters. Not that these officers were incompetent to testify as to what the general reputation was in the community, if they knew, but the testimony they give, as explained on cross-examination, is not sufficient to meet the requirements of the statute on this question.

It is, therefore, our holding that the State has not sustained the burden of proof placed upon it in this case sufficiently to warrant the court in entering a mulct tax against this company

and this property. Further than this, the evidence shows that, when the owners of this property learned of the existence of this nuisance, they refused to receive the rent for the month of July, and promptly turned the matter over to their attorney, who took it up with Pickett; and he left town, and the place was vacated and closed before this case was tried. There is no reason to question the good faith of the owners of this property in using their best efforts to abate this nuisance, and in fact it was abated prior to the time the case was tried. We have held that, where the owner of property in good faith abates the nuisance, the court is not only not warranted in assessing a mulct tax, but also is not warranted in granting a permanent injunction. *Eckert v. David,* 75 Iowa 302. As we view this case, the court was in error in assessing this mulct tax against the property in question and the owners thereof.

It is further urged by appellant that the court erred in entering the order of abatement and permanent injunction against appellant and its property. Having found the existence of the nuisance, the court had no option in the matter, under Section 2032, Code of 1924, regardless of whether or not the property owner had knowledge of the nuisance. See *McCoy v. Clark,* 109 Iowa 464; *Lewis v. Brennan,* 141 Iowa 585; *Smith v. Foster,* 153 Iowa 664. Sections 2037 and 2038, Code of 1924, provide for release of this abatement order under the conditions therein provided. The court therefore did not err in issuing the injunction and making the abatement order.

2. INTOXICATING LIQUORS: nuisance: abatement: knowledge of owner.

The conclusion having been reached in the fore part of this opinion that the evidence does not show that the property owner had knowledge of the illegal use of this property, it follows as a natural consequence that it was improper to tax against it the costs, including attorney's fees. *Drake v. Kingsbaker,* 72 Iowa 441; *Morgan v. Koestner,* 83 Iowa 134; *State v. Knapp,* 178 Iowa 25.

For the errors pointed out herein, the case is reversed.—*Reversed.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.