[Crim. No. 1046. Third Appellate District.—August 21, 1928.]

## THE PEOPLE, Respondent, v. THOMAS CALVERT et al., Appellants.

Lindauer & Horan for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The information charges that on or about March 29, 1928, Thomas Calvert, Arnold Calvert, Carl A. Calvert, Anthony Pimentel, and Frank Smith did "unlawfully, willfully and feloniously possess and have in their

control a still, which was then and there designed, used and intended for use in the manufacture of intoxicating liquor for beverage purposes, to-wit: whisky sometimes called jackass brandy, then and there containing one-half of one per centum and more of alcohol by volume.'' Pimentel pleaded guilty and was released on probation. The other defendants were tried together. Smith was acquitted and the three Calverts were found guilty. They moved for a new trial, which was denied, and this appeal is from the judgment and the order denying a new trial.

John J. and Frank Alameda are the owners of 140 acres of land near Cordelia, in Solano County. They leased the buildings thereon to a man named Jack Burns for a period covering the time of the alleged offense. About 11 o'clock in the forenoon of March 29, 1928, three peace officers went to the Alameda place and in an open shed thereon they discovered a still in operation, discharging alcohol into a wash boiler, Pimentel being in the immediate charge of the plant at that time. Parts of another still were later found lying near a creek in the same vicinity. The officers then went to the dwelling-house, about 350 feet from the shed, where they found Smith and the three Calverts, Arnold being in bed. It does not appear by what right or authority the defendants were in possession of the premises. Carl said to one of the officers, but not in the presence of the other defendants, that ''they were paying money for protection,'' that ''they were supposed to be tipped off if they were going to be raided.'' Thomas made similar statements to another officer. The court instructed the jury that these admissions were evidence only against the defendants who made them. Pimentel testified that all of the defendants participated in the installation and operation of the still. While this testimony stands uncontradicted, Pimentel was clearly an accomplice. Appellants contend that there is no corroboration of his testimony as against Arnold. Pimentel testified that the defendants operated the plant on the Alameda place during January, 1928, and then moved it to a place above Boyes Springs, in Sonoma County, where they operated it for a time and thereafter moved it back to the Alameda place, where ''at first we . . . were going to set them down in the creek, but the flood came and washed it away,'' and that two of the stills were in operation in the

shed at the time the officers came and "the third still was down the creek." ▓▓ Eugene Potterton, a deputy sheriff of Napa County, testified that about the middle of January, 1928, he saw Arnold Calvert "operating the still" on the Alameda place; that he saw the plant in operation there several times during that month; that in the latter part of January or the first of February he, Potterton, hauled the equipment and several barrels of liquor down to the road, where they were loaded on defendants' truck and taken away; that "around the middle of March" Carl A. Calvert and Pimentel returned to witness' place with a truck, on which "they had a box of groceries . . . in the cab of it" and "then they had a lot of stuff covered with canvas that I did not see"; that they left the truck there for three days and then took it away; that at the time he hauled the equipment down to the road he was a deputy sheriff of Napa county; that he did not "at any time tell any of the officers of the law that there were stills in operation" on the Alameda place or "that the Calverts were running a still up on the Alameda place." The witness later testified as follows: "Q. Who is the sheriff whom you served? A. Steckter now. . . . Q. Did you communicate to him what you saw on the ranch? A. I did. Q. When? A. December, January, March. Q. Not in February? A. It was the early part of February, if I did."

Counsel for defendants requested the court to instruct the jury that "the witness Potterton is an accomplice as to the crime charged against the defendants." The court refused to give the proposed instruction, but instructed the jury that if "Potterton aided, assisted, abetted or encouraged" the commission of the alleged crime he "was an accomplice within the meaning of the law and you cannot convict the defendant upon his testimony alone unless it is corroborated by such other evidence as shall tend to connect the defendants with the commission of the offense and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof," and that the testimony of an accomplice "cannot be corroborated by the testimony of another accomplice." An instruction to the same effect was given relative to the testimony of Pimentel. In his argument to the jury, the district attorney contended that the witness Potterton was not an accomplice, but that

his acts were merely those of an officer in an honest effort to secure evidence of the offenses being committed by the defendants. Under the evidence, the question whether Potterton was an accomplice was exclusively for the jury to determine. (*People* v. *Spaulding*, 81 Cal. App. 615, 618 [254 Pac. 614]; *People* v. *Swoape*, 75 Cal. App. 404, 413 [242 Pac. 1067]; *People* v. *Demara*, 64 Cal. App. 121, 123 [220 Pac. 673].) ▇ An officer who feigns complicity in the commission of a crime for the mere purpose of securing evidence upon which to prosecute the offender is not an accomplice. (*People* v. *Spaulding, supra; People* v. *Lanzit*, 70 Cal. App. 498, 509 [233 Pac. 816]; *People* v. *Heusers*, 58 Cal. App. 103, 104 [207 Pac. 908]; *People* v. *Keseling*, 35 Cal. App. 501, 504 [170 Pac. 627].)

▇ Appellants contend that the court should have instructed the jury that Pimentel was an accomplice. The record fails to show that the defendants requested the court to give such an instruction. The proposed instruction, which appellants contend should have been given, did not contain Pimentel's name, but his name was inserted therein after the trial. Pimentel's own testimony shows so clearly and certainly that he was an accomplice that no juror could have had any doubt that he was such. It was shown at the trial that he had entered a plea of guilty to the very charge upon which the other defendants were being tried. Since the only possible inference to be drawn from the evidence is that he was an accomplice, and it is inconceivable that the jury did not so find, the rights of the other defendants were not prejudiced by the failure to instruct that he was an accomplice. (*People* v. *McDermott*, 75 Cal. App. 718, 720 [243 Pac. 485].)

▇ The jury found the appellants "guilty as charged in the information with recommendation for leniency of the court." The court stated that "the leniency of the court is something with which the jury have nothing to do" and directed the jury to retire for further consideration of the case, giving them forms of verdict containing no recommendation as to punishment. Thereafter the jury returned a verdict finding the appellants guilty as charged in the information. There was no error in the court's action in this regard. (*People* v. *Pyler*, 91 Cal. App. 516 [267 Pac. 370].)

■ In support of their motion for a new trial appellants filed the affidavits of some of the jurors in which they stated they were guilty of misconduct in arriving at their verdict. The court made an order striking out these affidavits. Counsel for appellants say: "Counsel does not contend that the verdicts were decided by lot. But we do contend that they were decided by means other than a fair expression of opinion on the part of all the jurors." In *People* v. *Reid*, 195 Cal. 249, 261 [36 A. L. R. 1435, 232 Pac. 457, 462], it is said: "Upon well-grounded considerations of public policy jurors are legally disabled to impeach their verdict by any means, whether it be by affidavit or by testimony or by extrajudicial statements. . . . The only exception . . . is in the case of so-called 'chance verdicts.' (Code Civ. Proc., sec. 657, subd. 2.)"

■ Affidavits were presented to the effect that three of the jurors were permitted, during their deliberations, to telephone to their homes. This was in direct violation of the provisions of section 1128 of the Penal Code. Counter-affidavits, however, show that in these telephone conversations no reference was made to the case on trial or to any matter which could have influenced any of the jurors. The counter showing was sufficient to warrant the denial of the motion for a new trial on the ground of such misconduct. (*People* v. *Cord*, 157 Cal. 562, 571 [108 Pac. 511]; *People* v. *Page*, 86 Cal. App. 148, 260 Pac. 591; *People* v. *Murphy*, 91 Cal. App. 731 [268 Pac. 927].)

■ Appellants contend that the information does not state a public offense "in that it failed to allege that still charged in the information was 'knowingly' possessed." The information charges that the defendants "unlawfully, willfully and feloniously" possessed the still. "To do a thing wilfully is to do it by design, with set purpose." (*People* v. *Sheldon*, 68 Cal. 434, 437 [9 Pac. 457, 459].) To do a thing wilfully is to do it knowingly. (*People* v. *Swiggy*, 69 Cal. App. 574, 581 [232 Pac. 174]; 4 Words & Phrases, 2d ser., p. 1304; Pen. Code, sec. 7, subds. 1 and 5.)

■ Appellants contend that the evidence shows they had possession of three stills, if any, constituting three separate offenses, and that the district attorney should have been required to elect upon which he relied for a conviction. It

is true that the witnesses refer to two stills in operation at the time of the arrest and another incomplete still near the same place. The liquors from what they termed two stills were being discharged into a single receiver, a wash boiler. In discussing the subject of distillation in Cyclopedia Americana it is said: "The essential features in a simple distillatory apparatus are: 1. The still, pot, or retort, that is, the receptacle for the material to be distilled. . . . 2. The condenser, by means of which the distillates are condensed. 3. The receiver, which collects the products of distillation in a liquid state." Webster's New International Dictionary defines a still as follows: "A vessel, boiler, or copper used in distilling liquids, esp. alcoholic liquors; a retort. Sometimes, the whole apparatus used in vaporization and condensation." A still, in the broader meaning, includes the receiver into which the distilled liquor is discharged, as clearly appears from the illustration accompanying the definition. It is clear that the word still is used in this broader sense in the statute under which the defendants were prosecuted. It makes it unlawful to knowingly have the possession or control of "any still, still worm, still cap, still condenser or stilling device of any kind, designed, used or intended for use in the manufacture or production of intoxicating liquor for beverage purposes," with stated exceptions not material here. (Stats. 1927, p. 497.) The information charges that the defendants had the possession and control of "a still," meaning a complete still, not merely some of the parts thereof. The evidence shows that there was but one receiver, the wash boiler, and, therefore, but one complete still in the possession and control of the defendants. In view of this conclusion it is unnecessary to discuss the question whether the possession and control of two or more stills in a single room, operated as a single plant, would constitute more than one crime. What the appellants term three stills are so intimately connected together by the evidence that if they were in possession of one they were in possession of all of them.

The judgment and the order are affirmed.

Hart, J., and Plummer, J., concurred.