[Crim. No. 2818. First Dist., Div. Two. June 30, 1952.]

THE PEOPLE, Respondent, v. LOREN D. ROOT, Appellant.

A. E. Bagshaw for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Wallace G. Colthurst, Deputy Attorney General, R. M. Sims, Jr., District Attorney (Marin), and William O. Weissich, Deputy District Attorney, for Respondent.

DOOLING, J.—Defendant was accused of four violations of Penal Code, section 288, and was found not guilty on three counts and guilty on one count. Three of such offenses, including the one on which defendant was found guilty, were alleged to have been committed with a little girl between 5 and 6 years old. To the other alleged offenses there was no eyewitness except the child involved but in the case of the count on which defendant was found guilty, because of a prior complaint of the little girl to her mother, a police officer, Giampoli, had concealed himself in defendant's basement and the little girl's testimony was corroborated by Giampoli to the extent of his observation of the conduct of the defendant with her.

On that occasion defendant was working in his garden when the little girl entered it and asked defendant for some bubble gum. Giampoli testified that he heard defendant answer her: "I will get you some bubble gum; come with me first." Defendant took the child's hand and led her into the basement while Giampoli was concealing himself behind a water heater. Defendant sat on a barrel in the basement with his back toward Giampoli. He was dressed only in swimming trunks—in which he was accustomed to work in his garden—and shoes. From his place of concealment Giampoli could see defendant from his waist up. The child

was facing defendant leaning against one of his legs. Defendant placed his left arm around the child's shoulders "and I heard Mr. Root moaning low, in a low tone, and then the child was wriggling and squirming in his arm, and I heard Mr. Root say as he looked toward the door, 'You won't tell anybody, will you?'" Giampoli could not see the child's hands. He approached defendant from the rear and told him that he was under arrest.

The child testified that she had put her hand under defendant's trunks upon the most intimate part of his body, using a childish word that her mother testified she always used to indicate that part.

The evidence is recited in this detail because appellant urges with great earnestness that it was not sufficient to support the finding of guilt.

The evidence of the child was explicit and, although the officer could see only a portion of the bodies of the actors, what he did observe was significant. The evidence was amply sufficient if believed to support the verdict. ■ That the child in demonstrating the position which she occupied on that occasion sat upon the attorney's knees with her back to him would be a factor for the jury to consider but, in view of the officer's testimony that she was facing the defendant, at most it created a conflict in the evidence for the jury to resolve.

■ The child gave testimony that reasonably satisfied the trial judge that she appreciated the nature of an oath and was qualified to receive just impressions and relate accurately what had occurred. Her childish conduct and her inability or refusal to answer many questions might well affect the weight to be given to her testimony by the jury which observed it. Their reaction to these observations may have resulted in their verdicts of not guilty on the counts as to which there was no other witness. On the elements of the particular offense her testimony was positive and unshaken, and substantially corroborated by that of the officer. We cannot be unconscious of the dangers inherent in receiving the testimony of a child as young as this one, particularly in a case of this character, but reviewing her entire testimony we are satisfied that the trial judge did not abuse his discretion in permitting her testimony to go before the jury. (*People* v. *Arcia*, 85 Cal.App.2d 127, 129 [192 P.2d 31]; *People* v. *Gibbons*, 83 Cal.App.2d 504 [189 P.2d 37]; *People* v. *Ash*, 70 Cal.App.2d 583 [161 P.2d 415].)

The jury after deliberating for over an hour and one-half returned into court and reported that they were hopelessly deadlocked. This was about 6:45 p. m. and the judge asked them to deliberate further and sent them out to dinner. They returned from dinner at approximately 8:45 p. m. and in 10 or 15 minutes announced that they had reached a verdict. ▮ The verdicts were not guilty on three counts and guilty on the one. On being polled two jurors announced that the verdict of guilty was not their verdict and three announced that the three verdicts of not guilty were not theirs. The attorney for defendant thereupon moved the court to discharge the jury on the ground that it was obvious that the jurors were trying to compromise their verdict. This motion was denied, and fifteen minutes later the jury returned the same verdicts to which on being again polled they all assented.

We cannot agree with appellant that these facts demonstrate that the verdicts were the result of a compromise. ▮ ''The presumption is that the jury performed their duty with fidelity to their oath . . . and this presumption can be overthrown only by showing some act of positive misconduct.'' (*People* v. *Eggers,* 30 Cal.2d 676, 691 [185 P.2d 1].) ▮ The fact that the jury found the defendant guilty on only one count is not evidence that the verdict was the result of a compromise of any juror's convictions (*People* v. *Stangler,* 18 Cal.2d 688, 696 [177 P.2d 321]; *People* v. *Taylor,* 88 Cal.App.2d 983, 987 [199 P.2d 751]; *People* v. *Christensen,* 32 Cal.App.2d 380 [89 P.2d 1095]) and it is, perhaps, significant that the count on which appellant was found guilty was the only one in which the testimony of the child had corroboration of another witness.

▮ Appellant argues now that after the poll developed that the jurors were not agreed upon the verdicts returned the judge should have instructed the jury again that they were not to compromise their convictions to arrive at any verdict. He made no such request in the trial court simply commenting when the judge directed the jury to resume its deliberations: ''I prefer to let my objection stand.''

No complaint is made that the jurors had not been properly instructed as to their duties when the case was given to them and we are not persuaded that any duty rested on the trial judge on his own motion to give them any further instructions.

Affidavits of jurors that those voting not guilty were per-

suaded by the foreman to change their votes to guilty on one count while jurors voting guilty changed theirs to not guilty on the other three were submitted on motion for new trial. Appellant concedes in his brief on appeal that the verdict could not be impeached by the jurors in this fashion.

At the time the jurors went to dinner one woman juror went to the women's rest room in the eating place and after dinner another did so. In the second instance the bailiff left the other eleven jurors on the sidewalk briefly while he went in search of the absent one. After the jury returned to the courthouse from dinner one juror separated from the rest long enough to telephone home that he would be delayed. These separations were for brief periods and there is no showing of any improper communication to any juror and affirmative showing that there was none.

Bystanders submitted affidavits that after their return to the courthouse several jurors at one time were absent but this fact was contradicted by other affidavits. The law requires the jurors to be kept together once their deliberations have commenced and on a showing even suggestive of any improper communication to any juror we might feel it our duty to reverse, but mere casual and temporary separations have frequently been held not prejudicial where there was in fact no improper communication with any juror. (*People* v. *Martin*, 87 Cal.App.2d 581, 590 [197 P.2d 379]; *People* v. *Truesdell*, 124 Cal.App. 360, 367 [12 P.2d 476]; *People* v. *Calvert*, 93 Cal.App. 568, 573 [269 P. 969]; *People* v. *Murphy*, 92 Cal.App. 729 [268 P. 927]; *People* v. *Knight*, 63 Cal.App. 63, 68 [218 P. 79].)

 Defendant introduced evidence of his good reputation for morality. One witness called by the prosecution in rebuttal was permitted to testify that his reputation for morality in the community where he lived was "below average." On his voir dire the witness stated that he had discussed defendant's morality with only two persons. This witness admitted that he told counsel for defendant that he did not know defendant's reputation for that quality and further: "To include a man's general reputation I think I would have to be much more familiar than I am with the people living in San Quentin Village and perhaps get all sides of the picture; I do not have such a complete picture."

 In the answer just quoted the witness showed a good understanding of the meaning of general reputation. Such

testimony must be of the general reputation, "(h)ence the witness to such reputation must, at least, be acquainted with the prevailing impression in the community, as disclosed by actions, conduct, or conversations relating to the character in issue, although it is not necessary that the witness testifying should know that the majority of the community have that impression." (*People* v. *Cord,* 157 Cal. 562, 572 [108 P. 511] ; 5 Wigmore on Evidence, 3d ed., §§ 1611-1613, pp. 481-484.) It has been specifically held in other jurisdictions that conversations with no more than one or two persons on the subject are not enough. (*Commonwealth* v. *Rogers,* 136 Mass. 158; *State* v. *Pickett,* 202 Iowa 1321 [210 N.W. 782].) However other witnesses whose qualifications were not challenged testified that appellant's general reputation for morality was not good and we do not on the whole case believe that the error in admitting the cumulative testimony of this single witness on the collateral issue of the defendant's reputation for morality amounted to prejudicial error. Appellant cannot complain that the testimony of this witness was not expressly limited in time to the period before his arrest on the pending charges since no objection was made on that ground.

Appellant assigns several instances of alleged misconduct in the prosecutor's argument to the jury. 1. A comment of the prosecuting attorney that appellant's attorney did not dare to cross-examine the People's witnesses to appellant's bad reputation for morality to ascertain the sources of their knowledge of such reputation. At the trial counsel for appellant permitted this argument to go unchallenged and it is not of such a character that, if misconduct, an admonition at the time would not have cured it.

2. A statement that the child had been doing these things with appellant for so long that appellant did not have to tell her what to do on the occasion when the officer was concealed in his basement. Upon objection the prosecutor withdrew this statement, although it was a reasonable conclusion from the child's testimony on cross-examination that she had engaged in similar conduct "lots of times" with appellant before she went to Portland, some months prior to the date of the occurrence in the basement.

3. A statement that while the People could not bring out what the children involved told their mothers but only the fact that they made complaints appellant's counsel could have done so on cross-examination but he did not dare be-

cause they would have been too damaging. Upon objection the prosecutor asked that this statement be disregarded and the court so instructed the jury.

4. A statement, to which appellant's counsel made no objection at the time, suggesting that if appellant's conduct with the children had been allowed to continue he might develop a fear of discovery and "What would have happened to (these children) if this thing had not been stopped?" This statement was perhaps unduly calculated to inflame the jurors' minds but if so counsel should not have let it pass without objection. ▆ Except in very extreme cases, where no admonition to the jury could undo the damage, counsel waives his right to claim misconduct on appeal by failing to take any action in the trial court. (*People* v. *Codina*, 30 Cal.2d 356, 362 [181 P.2d 881].) We cannot hold that the effect of the argument now objected to, if improper, could not have been cured by a timely admonition if the attention of the trial court had been directed to it.

The judgment of conviction and the order denying a new trial are affirmed.

Nourse, P. J., and Goodell, J., concurred.