STATE OF IOWA, appellee, v. MARTIS CLEO SCALF, appellant.

No. 50779.

(Reported in 119 N.W.2d 868)

FEBRUARY 12, 1963.

Clayton Schisel, of Des Moines, for appellant.

Evan L. Hultman, Attorney General, John H. Allen and John M. Creger, Assistant Attorneys General, Harry Perkins, Jr., Polk County Attorney, and James D. McKeon, Assistant County Attorney, for appellee.

SNELL, J.—Defendant, Martis Cleo Scalf, who identified himself as an ordained minister and as chairman of an organization known as "Elijah Ministry" was charged, tried and convicted by a jury of the crime of rape as defined in section 698.1 of the 1958 Code of Iowa. The offense charged is commonly called statutory rape. The victim was a girl 11 years old, and according to the prosecution subject to his teaching, malign influence and domination.

The sufficiency of the evidence to support the jury verdict of guilty has not been challenged and is not vulnerable to attack on appeal. It was ample. No useful purpose would be served by setting out the sordid and salacious details upon which the charge and verdict were based.

On appeal defendant alleges three errors. The first two relate to the rejection of character evidence and the third to punishment. They will be separately considered.

I. The words character and reputation are not synonymous. As said in State v. Poston, 199 Iowa 1073, 1074, 203 N.W. 257, 258, "Much confusion has arisen over the use of the words 'good reputation' and 'good character.' While for some purposes they are recognized as expressing the same idea, yet fundamen-

tally, 'character' and 'reputation' are wholly different. Roughly stated, character is what a man actually is; while reputation is what his neighbors say he is." See also State v. Case, 247 Iowa 1019, 1024, 75 N.W.2d 233. The foundation required for the admission of character or reputation testimony is not the same. For a complete analysis of the various problems involved see article by Dean Mason Ladd, 24 Iowa Law Review 498.

II. Paul G. Middlecoff was called as a witness by defendant. He had known defendant about 22 years and was a member of Elijah Ministry. Except that he had known defendant for 22 years and had met him frequently the witness made no claim whatsoever that he knew anything about defendant's reputation in the community or from personal contact had any opinion as to his character. He was asked this question: "And are you acquainted with or do you know the general reputation of Martis Scalf for his moral character?" The State objected to this question in that the question was improper in form and without proper foundation. No attempt was made to qualify the witness.

The objection was properly sustained. The question was directed to the witness's knowledge of the general reputation of the defendant for moral character. It was not directed to the witness's personal knowledge. The witness laid no foundation whatsoever and made no claim to any knowledge as to defendant's reputation in the community or any knowledge as to what defendant's neighbors thought of him.

III. Alice Knight was called as a witness by defendant. She, too, was a member of the Elijah Ministry and had been for 10 years and was proud that she knew defendant. At first she said that she had talked to people in the community as to defendant's moral character. Later in cross-examination she admitted repeatedly that she had never discussed defendant's moral character with "anybody." She disqualified herself from testifying as to what others said about the defendant. No attempt was made to qualify her to testify to anything except what others said. She made no claim to any knowledge as to the general regard with which defendant was commonly held and related

nothing from which she could base an admissible opinion as to defendant's character. Her testimony was properly stricken.

IV. In the article by Dean Mason Ladd, supra, the history and the mechanics of introducing character testimony are traced beginning with the English case of Regina v. Rowton in 1865. From this article by Dean Ladd we quote excerpts and paraphrase.

"The terms 'character' and 'reputation' are often used interchangeably in judicial opinions as synonymous expressions for the idea of character. Historically, character was alone significant, and was established by the personal opinion of those acquainted with the person whose character was questioned. Evidence of reputation has generally replaced personal opinion as the legal means of proving what the character of a person is today, but this issue is one upon which there is a sharp conflict. Character is the subject of proof and reputation is the means of proving it."

■ In Iowa character may be proved by both reputation and personal opinion.

■ "Even reputation must, to be admitted, be general in a community rather than based upon a limited class. While it is not necessary that a character witness know what the majority of the people of a neighborhood think of a person, he must know of the general regard with which the party is commonly held.

"It is the general concurrence of a great number of people reflecting the sentiment towards the party whose character is subject to inquiry that is necessary to establish a reputation and to warrant its use as evidence. * * * The requirement that the reputation be broadly general rather than that of a particular group, such as members of a church, lodge, or the police, again emphasizes the effort to get away from a secularized and consequently biased estimate of character. Reputation testimony is based upon the hearsay of a community and although hearsay is held inadmissible to prove other facts it becomes the very source of reliability for this type of proof."

■ As indicated by the illustrations used by Dean Ladd, a reputation or character witness must first lay the foundation from which he speaks.

█ V. The questions should be directed toward some specific trait pertinent to the question involved. There is no value in a question relating to a trait not pertinent to the issue in the case on trial.

In State v. Gordon, 3 Iowa (Cole) 410, 415, it is said: "It is evidence of character, which is admissible, which of course is to be confined to the trait of character which is in issue, or, as it is expressed by some of the writers, the evidence ought to have some analogy and reference to the nature of the charge. But the examination must be confined simply to the general character or reputation, and neither can ask questions as to particular facts or difficulties."

In State v. Case, 247 Iowa 1019, 1024, 75 N.W.2d 233, it was held proper for defendant to show his good character either by proof of his general reputation or of his real character. However, proof of good character may and must relate particularly to that trait of character involved in the crime charged so guilt thereof is rendered improbable. See citations on page 1025 of Iowa Reports.

In 22A C. J. S., Criminal Law, section 677(5), it is said:

"Except where the crime charged is such as to make difficult, or perhaps impossible, specification of the precise trait of character, good reputation for which would tend to indicate unlikelihood of its commission by accused, it is the general rule, although there is some authority apparently following a divergent view, that the evidence of good character offered by accused may and must relate particularly to that trait of character which is involved in the crime charged, so that the proof of good character will render it unlikely that he would be guilty of that particular crime."

In the leading case of State v. Ferguson, 222 Iowa 1148, 270 N.W. 874, certain basic rules are recognized. A defendant may put his moral character in issue. The evidence of good character must relate particularly to that trait of character which is involved in the crime charged. The evidence may be as to the general reputation of the defendant and it may also be shown by what a witness knows of the defendant from his personal observation or experience with him.

VI.   A witness testifying as to a defendant's reputation must speak from some foundation. If the witness is stating what others say it is hearsay as Dean Ladd comments but it is the witness's knowledge of that hearsay and the consensus that qualifies him to testify as to reputation.

In State ex rel. Seeburger v. Pickett, 202 Iowa 1321, 1325, 210 N.W. 782, 783, it is said:

"A general reputation refers to what is said of a person or place generally in the community. It cannot be proven by the statement of one or two individuals, but must be such as is generally current in the community. [Citations] It does not necessarily have to be a matter of discussion, because we have repeatedly held that the best evidence of good reputation is that nothing has ever been said or heard in the community about such a person or place. 'The best reputation is the one least talked about.' "

Our conclusion in the case at bar is in harmony with the reasoning in the Seeburger case. That case was an action in equity for an injunction to abate a liquor nuisance and to assess a mulct tax against real property and the owners. Under the statute on the issue whether the owners knew or ought to have known of the nuisance, evidence of the general reputation of the place was admissible. It was incumbent on the State to prove knowledge on the part of the owners or that the general reputation was such in the community that the owners "ought in reason to be held to have known it." Police officers testified as to the reputation as it existed among themselves, as officers, and not what was said generally in the community. It was held that this was not sufficient to impute to the owners knowledge of a bad reputation. The quotation "The best reputation is the one least talked about" is appropriate, sound logic and good law when determining knowledge of a bad reputation. Lack of discussion may, as suggested, refute a claim of bad reputation or indicate a good reputation, but lack of knowledge does not lay a foundation for an affirmative statement as to good reputation.

VII.  A witness testifying as to defendant's character as distinguished from reputation is offering his own opinion. This is permissible when but only when the witness has laid a

foundation of experience, contact and observation sufficient to form an opinion as to the trait of defendant's character involved. Mere acquaintance is not enough.

VIII. Two other character witnesses, also members of Elijah Ministry, were called by defendant. They testified that defendant's reputation was very good. Defendant thus had the aid of such witnesses as could furnish a foundation for their testimony. The testimony also opened the door for controverting testimony in rebuttal.

IX. Defendant claims error in subjecting him to excessive punishment by a sentence of 35 years in the penitentiary. The imprisonment for rape may be for life or any term of years not less than five. Section 698.1, Code of Iowa. There was evidence in this case of debauchery, licentiousness and the defilement of an eleven-year-old child in the name of religion. The disclosures were shocking to the sensibilities of decent people. After a fair trial the defendant was found guilty by a jury. The sentence imposed by the trial court was within the provisions of the statute and was not excessive.

The case is—Affirmed.

All JUSTICES concur.