STATE OF IOWA, appellee, v. TOMMIE J. HALL, appellant.

No. 52075.

June 14, 1966.

Harold Leener and Charles W. Bowers, both of Des Moines, for appellant.

150

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, and Ray Fenton, County Attorney, for appellee.

GARFIELD, C. J.—Defendant Tommie J. Hall, age 22, was indicted, tried and convicted of robbery with aggravation as defined in sections 711.1, 711.2, Code, 1962. His appeal assigns four errors, the second and third of which are argued together.

The State's evidence is that at about 12:15 on the night of July 8-9, 1965, defendant drove his red and white 1956 Chevrolet auto into the Hudson Oil Company's filling station at 928 Southeast Fourteenth Street in Des Moines and ordered a dollar's worth of "gas." After the attendant, Virgil Armstrong, put the gas in the car and went to its driver's side to collect the dollar, defendant "held a gun" on Armstrong, ordered him to drop the money he had inside the car and take a walk. Armstrong dropped the $56 he had in the car as directed, observed its license number and called police and the manager of the station.

Police Officers Hoffman and Mould answered the call, were given a description and the license number of the car and found it with defendant in it at 12:45 at Nineteenth and Cottage Grove, not far from the home of defendant and his parents, some four to five miles from the scene of the robbery. When the officers placed defendant under arrest they observed a ten-dollar bill and two "ones" on the floor of the car on the driver's side. The officers drove to the Hudson Oil station with defendant in their car, where Armstrong identified him as the one who committed the robbery. Defendant was then taken to the police station where a search of his person revealed $56.19. This was in addition to the $12 found in the car.

The officers procured a search warrant from Judge Harrison of the Des Moines Municipal Court at his home commanding any peace officer to search defendant's car. Police Officers Ferguson and Staats, acting under the warrant, found in the glove compartment a .22-caliber revolver loaded with six rounds of ammunition and the $12 in currency on the car floor. Armstrong testified the revolver received in evidence looked like the same gun defendant held on him.

Defendant admitted he drove his car to the Hudson station on Southeast Fourteenth Street for gas but testified it was earlier in the evening, after he left work at 9, went to the home of his friend Russell and they took a ride. He said he paid for the gas and denied being at the Hudson station again until he was taken there by the officers when Armstrong identified defendant as having robbed him. After visiting a restaurant and a root beer stand, according to defendant, he drove to the home of himself and parents about 10:30 and played cards upstairs most of the time until about 12:30 when several guests in the home left.

Defendant testified further he too left the home about 12:30 to drive to a filling station, near the place he was later arrested, to put air in a tire. He denied he knew there was a gun in his glove compartment and said it was put in there without his knowledge, he first learned of it when the officers told him they found it there. He later said his friend Russell put the gun in the glove compartment on Sunday and he saw it then. Defendant admitted he had $56.19 when arrested but said this included the $12 on the floor of the car and it had been paid him as wages. According to defendant the $12 was probably in his shirt pocket and fell out when he took off the shirt.

Defendant's parents, brothers, sisters and guests in the home testified in support of a claim of alibi that he and his car were at the home continuously from about 10:30 to 12:30 when he left with his car.

There is no contention the evidence is insufficient to support the verdict.

I. Error is assigned in overruling defendant's motion to suppress all evidence of and inquiry into his possession of a revolver and in overruling his motion to strike all testimony concerning such possession on the ground the search warrant was obtained without probable cause and on the strength of an affidavit made without knowledge or information. Reliance is upon Amendment 4 to the Federal Constitution and the holding of Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081, 84 A. L. R.2d 933, that the amendment is enforceable against the states through Amendment 14 and renders inadmissible in a state court evidence seized in violation of the former provision.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A like provision is Article I, section 8, of our state constitution.

We may observe at the outset that defendant's motions to suppress and to strike were too broad regardless of the legality of the search of his car. Certainly Armstrong's testimony that defendant held a gun on him was properly received in any event. However, we are not inclined to place our decision on this observation. We think the evidence of finding the gun in the car was rightly received.

The police officers who investigated the crime and arrested defendant first obtained from Armstrong a description and license number of the car used in committing the armed robbery and also obtained defendant's street address. The officers located the car with defendant in it and observed the $12 on the floor of the car. They reported this to the police department, asked that the car be impounded and a warrant obtained to search it. Certainly the investigating officers had reason to believe the gun used in committing the crime was concealed in the car and the rest of the stolen money was either in the car or on defendant's person. Officer Ferguson, who received the call for the search warrant, had a right to accept as reliable the report of the investigating officers in making his affidavit and application for the warrant.

That observations of fellow officers engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number see United States v. Ventresca, 380 U. S. 102, 111, 85 S. Ct. 741, 13 L. Ed.2d 684, 690, and citations.

We may as well quote at this point part of what the cited opinion (1965) says about probable cause for issuance of a search warrant: "While a warrant may issue only upon a finding of 'probable cause,' this Court has long held that 'the term "probable cause" * * * means less than evidence which would justify condemnation,' Locke v. United States, 7 Cranch 339,

348, 3 L. Ed. 364, 367, and that a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial. Draper v. United States, 358 U. S. 307, 311, 3 L. Ed.2d 327, 331, 79 S. Ct. 329. As the Court stated in Brinegar v. United States, 338 U. S. 160, 173, 93 L. Ed. 1879, 1889, 69 S. Ct. 1302, 'There is a large difference between the two things to be proved (guilt and probable cause), as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them.' Thus hearsay may be the basis for issuance of the warrant 'so long as there (is) a substantial basis for crediting the hearsay.' Jones v. United States, supra, 362 U. S. at 272, 4 L. Ed.2d at 708, 78 A. L. R.2d 233. And, in Aguilar we recognized that 'an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved 'whose identity need not be disclosed * * * was "credible" or his information "reliable".' Aguilar v. Texas, supra, 378 U. S. at 114, 12 L. Ed.2d at 729.

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting" (pages 107, 108 of 380 U. S., pages 688, 689 of 13 L. Ed.2d).

Questions involving searches of motorcars cannot be treated as identical to questions arising out of searches of buildings although the test is still whether the search is unreasonable.

Preston v. United States, 376 U. S. 364, 367, 84 S. Ct. 881, 11 L. Ed.2d 777, 780.

The sworn information and application for the search warrant signed by Officer Ferguson complies with section 751.4, Code, 1962, and recites in part the commission of the robbery on July 9 "wherein certain personal property, to wit: $100 in currency—and 1 handgun used in the crime was stolen;

"3. That he believes and has substantial reason to believe the said personal property is now concealed in a red over white over red 1956 Chev. 2dr 77-9685. Reg. to Tommy Jim Hall which is located at 1922 Woodland in Des Moines * * *, said personal property being in the possession of Tommy Jim Hall."

The search warrant issued by Judge Harrison complies with section 751.6 and describes the property to be seized in the language of the information.

■ Defendant's main attack upon the warrant is that the information and warrant state the "currency—and handgun used in the crime was stolen" when the gun was not stolen in the robbery in question.

On defendant's cross-examination of Officer Ferguson he said the statement in the information was supposed to be construed that the gun was used in the crime and not stolen. The information does plainly describe the gun to be seized as the one used in the crime. It would be quite unusual for a gun used in committing an armed robbery to be stolen in the commission of the crime.

In the description of the property to be seized a dash follows the word "currency" in the information and the words "was stolen" follow "1 handgun used in the crime" and three blank lines on the form used in preparing the paper. If it were intended to state that both currency and gun "were stolen" the words just quoted should of course have been used in place of "was stolen." If, as Officer Ferguson testified, it were intended to state the currency was stolen and the gun was used in the crime but not stolen, reference to the gun should have followed rather than precede the words "was stolen."

We are not persuaded the description in the information of the gun as not only the one used in the crime, which was correct,

but as having been stolen, which was incorrect, invalidated the search or rendered the gun inadmissible in evidence. Code section 751.3 authorizes issuance of a search warrant not only "1. For property which has been stolen * * *" but also "2. For property which has been used as a means * * * of committing * * * a felony." Section 751.4 provides the information shall allege "the existence of any ground or grounds specified in this chapter * * * for the issuance of a search warrant * * *" and "describe with reasonable certainty * * * the property to be seized."

Rugendorf v. United States, 376 U. S. 528, 531 to 533, 84 S. Ct. 825, 827, 11 L. Ed.2d 887, 891, is in point and fully supports our conclusion. There the affidavit for the warrant to search petitioner's (defendant's) basement and seize furs allegedly stolen erroneously stated petitioner was associated as manager with his brother Leo in the meat business and Leo was a fence for professional burglars. In fact petitioner terminated his business association with his brother about ten years before the search was made. In holding this factual inaccuracy did not invalidate the search warrant the opinion states:

"Petitioner attacks the validity of the search warrant. This Court has never passed directly on the extent to which a court may permit such examination when the search warrant is valid on its face and when the allegations of the underlying affidavit establish 'probable cause'; however, assuming, for the purpose of this decision, that such attack may be made, we are of the opinion that the search warrant here is valid. * * * The factual inaccuracies depended upon by petitioner to destroy probable cause—i.e., the allegations in the affidavit that petitioner was the manager of Rugendorf Brothers Meat Market and that he was associated with his brother Leo in the meat business—were of only peripheral relevancy to the showing of probable cause, and, not being within the personal knowledge of the affiant, did not go to the integrity of the affidavit.

"We believe that there was substantial basis for the Commissioner to conclude that stolen furs were probably in the petitioner's basement. No more is required."

Nothing is claimed for the reference in the information and search warrant to the stolen money as $100 rather than the $56

found on defendant's person. These two papers were prepared before the exact amount stolen from Armstrong was established by examining the gasoline pumps. Nor is illegality claimed in the seizure of the stolen money perhaps on the theory search of defendant's person and seizure of the money, even without a warrant, would not be unreasonable. See in this connection State v. Raymond, 258 Iowa 1339, 1344, 142 N.W.2d 444, 447, and citations.

     If it were conceded without so holding that the existence of probable cause here is doubtful, it is proper to consider this from United States v. Ventresca, supra, at page 109 of 380 U. S., page 689 of 13 L. Ed.2d, a 1965 seven-to-two opinion: "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United States, supra, 362 U. S. at 270, 4 L. Ed.2d, at 707, 78 A. L. R.2d 233." See also what is said Id., at pages 111, 112 of 380 U. S., page 691 of 13 L. Ed.2d.

II. The second and third assigned errors, argued together, relate to exclusion of testimony of defendant's witnesses Fentech and Marcketti.

Fentech owned and managed a market where defendant had been employed full time the past three years. He was asked if he knew defendant's reputation in Des Moines for peacefulness. The State was then permitted to ask the witness whom he had talked to in the community about defendant's reputation for peacefulness. He answered he had discussed it with no one other than the personal observation throughout the years. The State's objection the witness was disqualified from further testimony was then sustained. The ruling was evidently construed as applying to the question asked by defendant and the witness was excused.

Mr. Marcketti, defendant's immediate superior at the market, was asked if he knew his reputation in Des Moines for peacefulness and nonviolence. On examination by the State, permitted by the court, the witness said he had talked to four or five named persons and others about defendant's reputation for peaceful-

ness. The State said it made the same objections as to Mr. Fentech's testimony to which the court observed, "I think I sustained the objection." Defendant then asked Mr. Marcketti if he knew what people say about defendant regarding his peacefulness and nonviolence. The State interposed "Same objection." The court sustained the objection "as to the form of the question." Notwithstanding the ruling, the witness answered he had observed defendant around the store a great deal and discussed with people his reputation for nonviolence and peacefulness.

■ Since no motion was made to exclude the answer last referred to, it remained in the record. Correll v. Goodfellow, 255 Iowa 1237, 1247, 125 N.W.2d 745, 751, and citations; Castner v. Wright, 256 Iowa 638, 646, 127 N.W.2d 583, 587, 128 N.W.2d 885; Schneider v. Swaney Motor Car Co., 257 Iowa 1177, 1187, 136 N.W.2d 338, 344; Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 453, 138 N.W.2d 93, 97.

■ We hold the question asked Mr. Fentech and the first one asked Mr. Marcketti above referred to were improper in form and it was not reversible error to sustain objections to them. As stated, each witness was asked if he knew defendant's reputation in Des Moines for peacefulness or for peacefulness and nonviolence. Neither witness was asked if he knew defendant's *general* reputation for peacefulness or nonviolence or both.

■■ An accused may put his moral character in issue as bearing on the probability or nonprobability of his guilt of the crime charged. In Iowa this may be shown by what a witness knows of defendant's real character from his personal observation and experience with him. It is more frequently shown, however, as was apparently attempted here, by proof of defendant's *general* reputation in the community where he lived on and prior to the date of the alleged crime. Evidence of moral character, whether by direct proof or by proof of general reputation, must relate particularly to the trait of character involved in the crime charged so guilt is rendered improbable. State v. Ferguson, 222 Iowa 1148, 1161, 270 N.W. 874, and citations; State v. Case, 247 Iowa 1019, 1024, 1025, 75 N.W.2d 233, 237, and citations; State v. Scalf, 254 Iowa 983, 988, 119 N.W.2d 868, 871.

Where, as here, it is attempted to show moral character by the second method above referred to the proof must be of defendant's general reputation, not his reputation among a limited class. State v. Scalf, supra (at page 987 of 254 Iowa, page 870 of 119 N.W.2d), quotes this with approval from Dean Mason Ladd's article in 24 Iowa Law Review 498, 513:

"Even reputation must, to be admitted, be general in a community rather than based upon a limited class. While it is not necessary that a character witness know what the majority of the people of a neighborhood think of a person, he must know of the general regard with which the party is commonly held.

"It is the general concurrence of a great number of people reflecting the sentiment towards the party whose character is subject to inquiry that is necessary to establish a reputation and to warrant its use as evidence. * * * The requirement that the reputation be broadly general rather than that of a particular group, such as members of a church, lodge, or the police, again emphasizes the effort to get away from a secularized and consequently biased estimate of character."

State v. Case, supra, 247 Iowa 1019, 1024, 75 N.W.2d 233, 237, and Halligan v. Lone Tree Farmers Exchange, 230 Iowa 1277, 1285, 300 N.W. 551, 555, also cite Dean Ladd's article with apparent approval. State v. Hartung, 239 Iowa 414, 427, 30 N.W.2d 491, 498, 499, emphasizes the fact that where moral character is to be shown by evidence of reputation it must be *general* reputation.

The trial court indicated its ruling on the question asked Mr. Marcketti was based on the form of the question. Although this was not indicated in the ruling on the question asked Mr. Fentech, it is well settled that we will not reverse because of exclusion of evidence where there are, in fact, good grounds for the ruling even though they were not presented to the trial court. This is fully discussed in In re Will of Smith, 245 Iowa 38, 46, 47, 60 N.W.2d 866, 871, and citations. Among decisions to like effect are State v. Bales, 251 Iowa 677, 682, 102 N.W.2d 162, 165; Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 721, 107 N.W.2d 85, 94; State v. Stump, 254 Iowa 1181, 1188, 1189,

119 N.W.2d 210, 214, 215; State v. Wharff, 257 Iowa 871, 877, 134 N.W.2d 922, 926.

Our conclusion that no reversible error appears from the rulings complained of might also be put on the ground no offer of proof was made as to what either witness would testify regarding defendant's reputation. The general rule is that failure to offer proof of excluded testimony leaves nothing for review unless, upon the whole record, this is apparent. We do not think it is apparent here. Nizzi v. Laverty Sprayers, Inc., 259 Iowa 112, 143 N.W.2d 312; State v. Wharff, supra, 257 Iowa 871, 877, 134 N.W.2d 922, 926; Kramer v. F. W. Woolworth Co., 255 Iowa 633, 639, 123 N.W.2d 572, 575, and citations; Sewell v. Lainson, 244 Iowa 555, 559, 57 N.W.2d 556, 559; State v. Evenson, 237 Iowa 1214, 1218, 1219, 24 N.W.2d 762, 765; State v. Billberg, 229 Iowa 1208, 1218, 296 N.W. 396, 402. See also 5 Am. Jur.2d, Appeal and Error, section 604, page 70.

In State v. Ferguson, supra, 222 Iowa 1148, 1161, 1162, 270 N.W. 874, defendant attempted to show what his general moral character was by a witness who had known and done business with him 30 years. We held the record sufficiently showed what defendant was offering to prove and no formal offer of proof was required. That is not the situation here.

III. Defendant's remaining assigned error is directed to the receipt in evidence on the State's rebuttal of the fact of a phone call to Elwood, Kansas, at 1:42 a.m., July 9, from a phone booth near the place defendant was apprehended.

Officer Hoffman testified on the State's case in chief that defendant told him he had phoned a friend in Hollywood, Kansas, just before he was apprehended at 1900 Cottage Grove. Defendant testified the call was to his former boss, S. R. Reed in Elwood, Kansas, just prior to his arrest.

In rebuttal the State called Mr. Marlin Rogers, manager of Northwestern Bell Telephone Company in Des Moines, who testified the records of toll calls were not under his direct supervision but were under his control; he explained how the records were made up on a timing machine which showed the time and place of the call and the number called. He identified a card found in the company's record center showing a call at 1:42

a.m., July 9, to Elwood, Kansas, from the booth at Nineteenth and Cottage Grove. The card was received in evidence over defendant's objection the witness was not qualified to identify the record since it was not shown who made it or that the witness was in charge thereof.

Both sides cite Olesen v. Henningsen, 247 Iowa 883, 888, 889, 77 N.W.2d 40, 43, as to what should be shown to render records of phone calls admissible in evidence. We need not repeat what is there said. We think under the rule there laid down the record of this phone call was receivable in evidence. However, the Olesen case was decided more than five years before the present applicable statute, section 622.28, Code, 1962, took effect on July 4, 1961.

The pertinent part of this statute now provides: "Any writing or record, whether in the form of an entry in a book, or otherwise, including electronic means and interpretations thereof, offered as memoranda or records of acts, conditions or events to prove the facts stated therein, shall be admissible as evidence if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness, and if the judge finds that they are not excludable as evidence because of any rule of admissibility of evidence other than the hearsay rule."

Most of our decisions on admissibility of records antedate the foregoing statute and were decided under rules superseded thereby. Moffitt Building Material Co. v. U. S. Lbr. & Sup. Co., 255 Iowa 765, 768, 769, 124 N.W.2d 134, 136. Under our present statute and decisions subsequent to its effective date there is little doubt it was not reversible error to admit the record of this phone call. Moffitt case, supra; Bingham v. Blunk, 253 Iowa 1391, 1397, 1398, 116 N.W.2d 447, 450; Ritland v. Security State Bank, 257 Iowa 21, 26, 131 N.W.2d 464, 467, 468.

Further, admission of the phone record could have resulted in little if any prejudice to defendant. He testified he made the call. The record confirms defendant's testimony it was to Elwood, Kansas, not Hollywood as Officer Hoffman testified de-

fendant told him. Time of the call shown by the exhibit as 1:42 a.m., rather than about an hour earlier as testified by the officer, was also favorable to defendant. What there is about the exhibit that is prejudicial to him is not apparent.

The judgment is—Affirmed.

All JUSTICES concur.