**Martis C. SCALF, Appellant,**

v.

**John E. BENNETT, Warden, Iowa State Penitentiary, Fort Madison, Iowa, Appellee.**

**No. 19342.**

United States Court of Appeals
Eighth Circuit.

March 11, 1969.

Rehearing Denied April 28, 1969.

Rehearing En Banc Denied
April 28, 1969.

John L. Sloane, Des Moines, Iowa, for appellant and filed briefs.

William A. Claerhout, Asst. Atty. Gen. of Iowa, Des Moines, Iowa, for appellee; Richard C. Turner, Atty. Gen., of Iowa, was on the brief with William A. Claerhout, Des Moines, Iowa.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

Martis C. Scalf, an Iowa state prisoner, has appealed from the order of the United States District Court, Southern District of Iowa, The Honorable Roy L. Stephenson, denying his petition for habeas relief.

At the outset we note the chronology of the proceedings. On March 29, 1962, an indictment was filed in the district court of Polk County, Iowa, charging appellant with statutory rape in violation of § 698.1 of the 1958 Iowa Code. The victim was Joan Knight, who was on the date of the offense, September 22, 1961, eleven years old. At the time appellant was apparently 53 years of age.

Appellant was represented in the 3-day trial, which ended on April 26, 1962, by two court appointed attorneys. The jury found appellant guilty as charged. On May 25, 1962, he was sentenced to imprisonment for a term of 35 years. The judgment of conviction was affirmed. State v. Scalf, 254 Iowa 983, 119 N.W.2d 868 (1963).

The appellant filed a petition for a writ of habeas corpus in the district court of Iowa on October 30, 1963. He was represented in that proceeding by the same lawyer, apparently retained, who represents him here. A full hearing was held by the state court on the habeas petition. On September 29, 1965, the petition was dismissed. This action was also affirmed. Scalf v. Bennett, 147 N.W.2d 860 (Iowa 1967).

On July 18, 1967, appellant filed a petition for writ of habeas corpus in the federal district court. In the lengthy petition prepared by counsel, to which numerous exhibits were attached, appellant alleged many errors in the state court trial and averred they were of such di-

mensions that he was denied due process in violation of the First, Fifth, Sixth and Fourteenth Amendments to the Constitution.

On October 23, 1967, the district judge filed a memorandum opinion in which he reviewed the grounds relied upon for relief. After due consideration of appellant's claimed violations of his constitutional rights, Judge Stephenson stated: "[P]etitioner in the most part complains of matters which, if true, amount to nothing more than procedural errors. None of these alleged errors are of sufficient character to constitute a denial of due process or a deprivation of the constitutional right to a fair trial, and may not be reviewed in this proceeding. Durham v. Haynes, 368 F.2d 989 (8th Cir. 1966)," cert. denied, 390 U.S. 959, 88 S.Ct. 1054, 19 L.Ed.2d 1154 (1968).

Thereafter, appellant filed a motion for relief from the court's order of October 23, alleging that the indictment upon which he had been tried was fatally defective. In response to the motion the court reconsidered and set aside the denial of the petition for habeas corpus entered on October 23, and scheduled a hearing to afford appellant an opportunity to offer additional evidence relating to the claimed invalidity of the indictment. On February 15, 1968, a full hearing was held relating to this question. Included in the evidence were depositions taken pursuant to authorization by the court. On April 3, 1968, Judge Stephenson filed another order and memorandum opinion denying habeas relief in which he exhaustively reviewed the grounds relied upon by appellant. He found that the indictment was not subject to any infirmities, that it was valid in all respects and accordingly ruled the issue against appellant. Appellant persisted in filing additional motions, all of which were denied, and in due time, upon the granting of a certificate of probable cause by the district court, appellant perfected his appeal.

Although appellant's brief fails to conform to Rule 28(a) (2) of the Federal Rules of Appellate Procedure, effective July 1, 1968, in that it does not contain a "statement of the issues presented for review," our liberal consideration of the brief indicates that under appellant's "points and authorities" the issues which he presents are:

(1) The trial court erred in allowing the prosecutor to "introduce the question of appellant's religion", which "resulted in depriving appellant of due process and the equal protection of the law."

(2) Appellant was deprived of an effective appeal from the judgment of conviction for the reason that only one typewritten 220 page transcript was filed in the Supreme Court of Iowa, and because he was ineffectively represented on appeal.

(3) The state trial court erred when it permitted testimony to be given by a newspaper reporter.

(4) The prosecutor suppressed evidence favorable to appellant.

(5) The indictment was fatally defective.

 The character of the asserted errors relied on to annul the conviction prompts us to direct attention to the deeply rooted principle that habeas corpus does not serve as a substitute for a review of nonconstitutional trial irregularities, and to once again recognize the limitations on the function of the courts in post conviction proceedings collaterally challenging the legality of a conviction.

 More precisely, on petition for writ of habeas corpus by state prisoners errors of the state trial court are not reviewable on federal habeas corpus unless there has been a deprivation of constitutional rights such as to render the judgment void or to amount to a denial of due process. Durham v. Haynes, supra, 368 F.2d at 990; Trujillo v. Tinsley, 333 F. 2d 185, 186 (10th Cir. 1964); Wilson v. Nebraska, 316 F.2d 84, 85–86 (8th Cir. 1963). Habeas corpus relief on the ground of incompetency of counsel or denial of effective counsel will be granted "only when the trial was a farce, or a

mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation." White v. McHam, 386 F.2d 817, 818 (5th Cir. 1967); Williams v. Beto, 354 F.2d 698, 704 (5th Cir. 1965); See Maye v. Pescor, 162 F.2d 641, 643 (8th Cir. 1947). And the writ will not be used to test an indictment unless it is constitutionally defective. Knewel v. Egan, 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036 (1925); Bergemann v. Backer, 157 U.S. 655, 659, 15 S.Ct. 727, 39 L.Ed. 845 (1895); Johnson v. Beto, 383 F.2d 197, 198 (5th Cir. 1968); Roth v. United States, 295 F.2d 364, 365 (8th Cir. 1961), cert. denied, 368 U.S. 1004, 82 S.Ct. 639, 7 L.Ed.2d 543 (1962); Keto v. United States, 189 F.2d 247, 251 (8th Cir. 1951). Compare Fay v. Noia, 372 U.S. 391, 412, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

## THE RELIGIOUS ISSUE

 This contention calls for a brief resume of the evidence. At the time of the offense, and prior thereto, appellant was, by his own admission, a self-ordained pastor in a religious sect denominated Elijah Ministry. The mother of Joan Knight and Judi Knight, 9 years old, was a member of the Elijah Ministry. Joan and Judi, according to their testimony, were generally familiar with some of the doctrines of that cult. They and their mother, Mrs. Knight, testified that it was a part of the creed of the Ministry that members would be joined to each other by acts of intercourse. Evidence of this nature was given in connection with the assaults by appellant upon Joan and Judi. They testified that appellant came to their apartment on the evening of September 22. Joan and Judi were in their bedroom when appellant entered. He began discussing the Ministry. Judi left the room. Scalf told Joan to remove the bottom part of her pajamas. She complied "because I was afraid of him." Appellant informed Joan that if she resisted "he would tell us what God would do to us, and usually it would mean dying or being away from your mother; that's what he told us." At appellant's instruction, Joan lay on the bed and the act of intercourse followed. Then appellant followed a similar procedure with Judi.

We have engaged in this brief resume to show how the matter of appellant's religion entered the case. Counsel for appellant at the trial made no objection to this line of questioning by the prosecution. In fact, on cross-examination and by use of defense witnesses, including appellant himself, the defense attorney delved more deeply into the religious issue than did the prosecution. Appellant, in addition to denying the act of intercourse, testified that the Elijah Ministry did not practice intercourse as a religious ritual and that it adhered to the Ten Commandments. To rebut this testimony and to impeach the credibility of appellant and his character witnesses, the prosecution produced witnesses who testified that the Ministry did practice intercourse and believed in only the two commandments: Thou shalt love thy Lord and thy neighbor as thyself.

While we do not doubt that a defendant would be deprived of due process if his religion were improperly introduced to his prejudice in a proceeding where it had no bearing, this is not such a case. We agree with the district court that the record does not disclose anything amounting to an "attack" on the appellant's religion, and that the "religious organization of petitioner was inextricably wound into the events which developed that night." The prosecution's injection of the tenets of the Elijah Ministry was for the purpose of showing "one of the many relevant circumstances surrounding the commission of the crime which the prosecutor must necessarily refer to in order to present a logical and well-developed case." We are convinced the prosecution did not unduly press the religious issue in its case. It merely presented enough background to show the

jurors why Joan submitted to appellant's attack. Potentially prejudicial evidence, normally inadmissible, may be admissible if it bears upon a relevant circumstance in the case. See and compare Scales v. United States, 367 U.S. 203, 255–256, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); Lisenba v. California, 314 U.S. 219, 228–229, 62 S.Ct. 280, 86 L.Ed. 166 (1941); United States v. Bowe, 360 F.2d 1, 14 (2d Cir. 1966), cert. denied, 385 U.S. 961, 87 S.Ct. 401, 17 L.Ed.2d 306 (1966); Miller v. Oberhauser, 293 F.2d 29, 31 (9th Cir. 1961); Travis v. United States, 269 F.2d 928, 938–939 (10th Cir. 1959), reversed on other grounds, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); United States v. Rosenberg, 195 F.2d 583, 595–596 (2d Cir.), cert. denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952).

Appellant argues in connection with the religious issue that the prosecution made inflammatory remarks in his argument to the jury. The arguments of counsel were not preserved and are not here for examination. Appellant was, however, permitted in the district court to offer testimony of persons in the courtroom relating to the so-called prejudicial argument. Although allegedly prejudicial remarks are generally not reviewable in a habeas proceeding, *see* Jackson v. California, 336 F.2d 521, 524–525 (9th Cir. 1964); Chavez v. Dickson, 280 F.2d 727, 735 (9th Cir. 1960), cert. denied, 364 U.S. 934, 81 S.Ct. 379, 5 L.Ed.2d 366 (1961); cf. Miller v. Oberhauser, supra, 293 F.2d at 31, the district court nevertheless considered this contention and resolved it against appellant. Our review of the evidence convinces us that the district court was correct in resolving this issue against appellant.[1]

## THE REVIEW ON APPEAL OF APPELLANT'S CONVICTION

■ The thrust of appellant's argument is that his appeal from the judgment of conviction could not have received proper consideration by the Supreme Court of Iowa because only one typewritten copy of the transcript of the trial proceedings was filed. The assertion is made that "[n]o supreme court could be expected to pass around, in round-robin fashion, a 221 page typewritten transcript, and from that transcript play the role of appellate counsel." This contention is in our view frivolous. We are not inclined to assume that the Iowa Supreme Court was derelict and failed to responsibly review all issues presented on the appeal. The opinions of that court, 119 N.W.2d 868 and 147 N.W.2d 860, disprove the claim of inadequate review. Beyond doubt appellant had the full benefit of appellate procedures accorded indigent and nonindigent defendants in Iowa. Entsminger v. Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967) and Long v. District Court of Iowa, etc., 385 U.S. 192, 87 S. Ct. 362, 17 L.Ed.2d 290 (1966) are plainly distinguishable and have no relevance here.

■ Appellant's related argument that his counsel did not effectively represent him on appeal is likewise without merit. The Supreme Court of Iowa considered this contention at length in the opinion affirming the denial of habeas relief. 147 N.W.2d at 863–864. Judge Stephenson also delved into this question and found that counsel had made a conscientious, good faith effort to represent appellant on appeal. Tested by the standards stated above relating to review in a post-conviction proceeding of the adequacy of counsel, we have no difficulty in agreeing with the district court's conclusion.

## TESTIMONY OF NEWSPAPER REPORTER

■ Here again appellant complains about a procedural matter which occurred during the trial. His theme is that

---

1. It has been held that statements concerning a defendant's religion are justified if they have a legitimate bearing on the issues. Rosenthal v. United States, 45 F.2d 1000, 1003, 78 A.L.R. 1415 (8th Cir. 1930); 5 Wharton, Crim.Law & Proc. § 2172 (1957); see also United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

the state prosecutor colluded with a newspaper reporter after appellant's arrest to elicit prejudicial information for use against appellant àt trial. This contention is patently without foundation in fact or law. The record is abundantly clear that appellant himself solicited the interview with the reporter. There is not an iota of evidence to support the assertion that the interview resulted from collusion or any wrongdoing by the prosecutor. Furthermore, there was no objection to the reporter's testimony. We have examined it and find nothing therein indicative of error reaching constitutional dimensions.

### SUPPRESSION OF EVIDENCE

The district court was concerned over the contention that there was misconduct by the prosecutor in attempting to suppress evidence favorable to appellant. In this connection, Judge Stephenson stated: "This is a serious allegation on a matter of grave concern to the courts. The suppression of evidence by the prosecution could clearly be a denial of due process in the conviction of petitioner. Brady v. Maryland, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963)." And habeas corpus will lie to remedy a prejudicial non-disclosure. Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287, 291 (1966); see Ingram v. Peyton, 367 F.2d 933, 936 (4th Cir. 1966); Barbee v. Warden, 331 F.2d 842, 846 (4th Cir. 1964). It is evident that because of the serious ramifications of such an allegation Judge Stephenson

carefully searched the record and various exhibits and found them "devoid of any indication of suppression of evidence by the prosecution."

We, too, have examined the voluminous file and detect no evidence to support this charge. Appellant relies on two incidents developed in the hearing in the state habeas corpus action. Our review satisfies us that the district court correctly analyzed the evidence relating to these incidents and properly concluded that they were wholly insufficient to establish any attempt to suppress evidence favorable to appellant.

### INVALIDITY OF INDICTMENT

The indictment was not challenged before or during the trial in the state court. This issue was raised for the first time in appellant's state court petition for habeas relief. Apparently, the controversy was precipitated by a notation on the information filed in the Municipal Court of Des Moines, Iowa, reading: "Case ignored by Grand Jury." [2]

Appellant's position in the district court and here is that the quoted language shows that the March 1962 grand jury had initially refused to indict appellant but thereafter on March 29, 1962, the same grand jury returned the true bill and that this procedure violated §§ 771.21 and 771.22 Iowa Code 1962.[3]

As we have seen, Judge Stephenson reopened the case. Appellant was permitted to explore in depth the asserted

---

2. The information charged appellant with the offense in issue here.

3. § 771.21 provides in pertinent part that if the grand jury refuses to find an indictment the court must order the discharge of the defendant from custody and the exoneration of bail if he is on bond, unless the court, upon good cause shown, directs the charge should again be submitted to the grand jury.

§ 771.22 provides that a "dismissal of the charge does not prevent the same from being submitted to a grand jury as often as the court may direct; but without such direction it cannot be again submitted." Appellant contends that

under this section the charge could not be considered by the same grand jury without an appropriate order of the court and that such order was not made.

Even accepting appellant's contention that the same grand jury rendered a true bill on a previously ignored information there would be no error under Iowa law. § 771.22 has been construed by the Iowa courts to allow a grand jury to reconsider a charge without direction of the court. Greiman v. District Court, 249 Iowa 333, 338, 86 N.W.2d 819, 821–822 (1957); State v. Collis, 73 Iowa 542, 543, 35 N.W. 625, 626 (1887).

invalidity of the indictment. The issue was delineated to the question of whether the March 1962, or the March 1963, grand jury had ignored the information. This posed a fact situation. Based upon the evidence Judge Stephenson found:

"After reviewing the entire record now before the Court, it is the conclusion of the Court that the preliminary information (Exhibit 5) charging petitioner with the statutory rape of Joan Knight was ignored by the Polk County Grand Jury on March 26, 1963. It is also the conclusion and finding of the Court that petitioner, Martis Cleo Scalf, was previously indicted on the same charge on March 29, 1962. The records of the Polk County District Court Clerk and Polk County Grand Jury Clerk clearly establish the above facts. Although counsel for the petitioner implied that these records had been altered or otherwise tampered with, the Court finds no evidence to substantiate such claim.

"It is undisputed that the indictment rendered on March 29, 1962, is valid on its face. The indictment supersedes completely the preliminary information previously filed on the same charge. It was on this indictment, valid in all respects, that petitioner was tried and convicted in April 1962. It was, therefore, proper for a subsequent Grand Jury to ignore the preliminary information (Exhibit 5) on which a prior Grand Jury had rendered an indictment and on which a conviction had already been obtained. Such action by the Grand Jury was in no way prejudicial to petitioner and did not deny him due process."

We have with painstaking care examined all of the evidence and are fully convinced that Judge Stephenson's findings are supported by the overwhelming weight of the evidence. The conclusion is inescapable that the indictment is not subject to any infirmities and is sufficient in every respect to support the conviction.

In summary, it is convincingly clear that the voluminous record amassed as a result of the diligent efforts of counsel, wholly fail to demonstrate a denial of due process or the deprivation of any constitutional safeguard. In the exercise of an abundance of caution, the able and conscientious district judge permitted appellant to delve into matters ordinarily not reviewable in a habeas corpus proceeding. We, too, have explored in depth the alleged constitutional infirmities and are satisfied that none exist.

Affirmed.