**STATE of Iowa, Appellee,**

v.

**George Bert HOBBS, Appellant.**

No. 53360.

Supreme Court of Iowa.

Nov. 12, 1969.

Donielson & Pletz, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Larry Seckington, Asst. Atty. Gen., Raymond A. Fenton, County Atty., and James McKeon, Asst. County Atty., for appellee.

MASON, Justice.

Defendant George Bert Hobbs was indicted, tried and found guilty of robbery with aggravation contrary to sections 711.1 and 711.2, Code, 1966. The State charged defendant and three others with robbing a Des Moines grocer at gunpoint. Defendant was tried separately.

Defendant's appeal presents solely the question of exclusion of evidence offered bearing on his reputation as to certain character traits.

The incident giving rise to the criminal charge occurred about 7:30 p.m. April 13, 1968, while Joseph J. DeSio and his two sons, Tom and Joe, were working in Mr. DeSio's brother's store. As they were

cleaning up before closing, two men entered the front of the store; one pointed a gun at Tom and said, "This is it." Tom called his father from the back room and as Mr. DeSio came to the front of the store defendant pointed a gun at him. Mr. DeSio told Tom to give the men what they wanted. As directed by his father, Tom handed over a sum of money, something in excess of $227. The men left the store through the back door, drove away and defendant was later apprehended and identified as one of the robbers.

I. Defendant assigns as errors the court's sustaining objections to testimony of defendant's general reputation and its striking testimony offered of negative evidence to show defendant had a good reputation.

■ A defendant in a criminal case may elect to put his character in issue by producing evidence as to his good character as bearing on the probability or nonprobability of his guilt of the crime charged. This principle is based upon the philosophy that a man of good character would not be likely to commit the crime of which he is accused. State v. Sterrett, 68 Iowa 76, 78, 25 N.W. 936, 937; State v. Hall, 259 Iowa 147, 157, 143 N.W.2d 318, 324; and 1 Conrad, Modern Trial Evidence, section 173.

■ In Iowa this may be done by defendant showing his good character by proof of his real character—those peculiar qualities which the individual is supposed to possess which distinguish him from others and denote what a man really is, not what he is reputed to be—or of his general reputation—which is based on speech of his associates and is the sum of opinions generally entertained concerning what is reputed or understood to be the estimate of a person's character in the community in which he moves or resides. State v. Poston, 199 Iowa 1073, 1074, 203 N.W. 257, 258; State v. Hartung, 239 Iowa 414, 426, 30 N.W.2d 491, 498; State v. Case, 247 Iowa 1019, 1024, 75 N.W.2d 233, 237; and

State v. Scalf, 254 Iowa 983, 985–986, 119 N.W.2d 868, 869. See also 6A Words and Phrases, Character, pages 242–247.

■ Evidence of good character offered by defendant whether by direct proof or by proof of general reputation must relate particularly to the trait of character involved in the crime alleged. State v. Ferguson, 222 Iowa 1148, 1161, 270 N.W. 874, 882, and citations; State v. Case, supra, 247 Iowa at 1024–1025, 75 N.W.2d at 237, and citations; State v. Scalf, supra, 254 Iowa at 988, 119 N.W.2d at 871; and State v. Hall, supra, 259 Iowa at 157, 143 N.W. 2d at 324.

■■ In a charge of robbery or larceny the traits involved are honesty, integrity, and good citizenship. State v. Case, supra, 247 Iowa at 1025, 75 N.W.2d at 237; Dean Mason Ladd, Techniques and Theory of Character Testimony, 24 Iowa L.Rev. 498, 528. If the charge is robbery with aggravation the further specific traits of peacefulness and nonviolence are also relevant. All have a bearing on the probability or nonprobability defendant committed the crime charged.

■ It is to be remembered we are speaking here of "character" and "reputation" as bearing, not on the credibility of a witness, but on the probability or nonprobability of a defendant being guilty of the crime with which he is charged. For this purpose the State cannot offer any evidence unless the defendant puts the matter in issue. State v. Hartung, supra, 239 Iowa at 426, 30 N.W.2d at 498.

II. It is defendant's attempt to show moral character by proof of his general reputation in the community where he lived on and prior to the date of the alleged crime that gives rise to his first assignment of error.

In State v. Scalf, supra, 254 Iowa at 987, 119 N.W.2d at 870, and again in State v. Hall, supra, 259 Iowa at 158, 143 N.W.2d

at 324, we quote this from Dean Ladd's article in 24 Iowa L.Rev., supra:

"Even reputation must, be admitted in general in a community rather than based upon a limited class. While it is not necessary that a character witness know what the majority of the people of a neighborhood think of a person, he must know of the general regard with which the party is commonly held.

"It is the general concurrence of a great number of people reflecting the sentiment towards the party whose character is subject to inquiry that is necessary to establish a reputation and to warrant its use as evidence. * * * The requirement that the reputation be broadly general rather than that of a particular group, such as members of a church, lodge, or the police, again emphasizes the effort to get away from a secularized and consequently biased estimate of character. Reputation testimony is based upon the hearsay of a community and although hearsay is held inadmissible to prove other facts it becomes the very source of reliability for this type of proof."

■ When introducing reputation evidence as a means of proving defendant's character strict foundation requirements must be met. Several evidentiary facts must be established before a witness may testify as to what he has heard concerning defendant's reputation. These include: (1) The background, occupation, residence, etc., of the character witness, (2) His familiarity and ability to identify the party whose general reputation was the subject of comment, (3) Whether there have in fact been comments concerning the party's reputation for a given trait, (4) The exact place of these comments, (5) The generality of these comments, many or few in number, (6) Whether from a limited group or class as opposed to a general cross-section of the community, (7) When and how long a period of time the comments have been made. Dean Mason Ladd, Tech-

niques and Theory of Character Testimony, supra, 24 Iowa L.Rev. 518–529.

Precise formulation of the questions addressed to the witness is necessary to meet these foundation requirements.

III. William Gabrielson, Jr., the first of three character witnesses called by defendant, testified he knew George Hobbs approximately ten years before when Herman Olson took him in and raised him but not personally until he employed defendant from February until October 1967. He further indicated he was familiar with the defendant in relationship to the entire community around him. At that point he was asked, "Could you tell us whether or not you are familiar with his general reputation throughout the community and in the general area?" Objection was interposed that the question was incompetent and immaterial. The trial court sustained the objection.

The question was directed to the witness' knowledge of the general reputation of the defendant for moral character. It was not directed to his personal knowledge.

■ The question was objectionable on grounds insufficient foundation had been laid. The witness could not address himself to the question of his familiarity with defendant's reputation absent a showing comments had been made to him about defendant's reputation. How many comments, their type, place, time, duration and representative nature all were needed; none had been established. See specifically in this regard State v. Scalf, supra, 254 Iowa at 986–987, 119 N.W.2d at 869–870, where an almost similar foundation was laid and similar question asked witness. This court affirmed the trial court's sustaining of the objection on ground the witness had laid no foundation.

■ The objection though general in nature was sufficient. " * * * [W]hile an objection must be specific when overruled, there is a difference when the objec-

tion complained of is sustained. In the latter case, if the question is objectionable on any ground, the sustaining of it is not error, even though not specific." Jettre v. Healy, 245 Iowa 294, 300, 60 N.W.2d 541, 544. As stated in McCormick on Evidence, section 52, page 118, "If the trial judge *sustains* the general objection, the upper court is again charitable toward the ruling. When evidence is *excluded* upon a mere general objection, the ruling will be upheld, if any ground in fact existed for its exclusion." See also State v. Hall, supra, 259 Iowa at 158–159, 143 N.W.2d at 324, and citations.

An attempt was again made by counsel to lay a sufficient foundation for a statement from Mr. Gabrielson as to defendant's general reputation. More information was introduced concerning witness' background, occupation, length of time in the community, and acquaintance with defendant, but no further information was elicited establishing various types of comments involving defendant's reputation had been many in number, exact place of these comments, duration, and representative character. Mr. Gabrielson made reference to only one comment directed to him concerning defendant. The witness was then asked, "Mr. Gabrielson, based on your ten-year knowledge of George Hobbs in the area, could you tell us if you have formed an opinion as to whether or not he is—what his reputation is for peacefulness?" Timely objection was interposed specifically on the grounds the question was in violation of State v. Scalf, and State v. Hall, both supra.

Again the objection was correctly sustained. First, omission of essential evidentiary facts suggested in Division II, supra, made the question objectionable for lack of adequate foundation. Second, the question asked Gabrielson was improper in form. The witness should have been asked if he knew defendant's *general* reputation for peacefulness. The reason for such a requirement is stated in the portion of Dean Mason Ladd's Article quoted at length in State v. Scalf and State v. Hall, supra.

Additional questions were then asked Gabrielson without further foundation. He was asked, based on his experience and knowledge of George Hobbs, what was defendant's general reputation in the community for peacefulness, nonviolence, honesty and integrity and good citizenship? In each instance timely objection was interposed and sustained.

Though the form of the questions was nor proper, the questions were still objectionable on grounds of inadequate foundation. The objections were properly sustained and testimony of witness stricken.

IV. Judean Wealtha, another character witness called by defendant, testified he lived in Randall since his early youth, was a crop and turkey farmer and frequented the entire Randall, Story County, area in his work. He had known George Hobbs for several years and personally since 1960 when he employed the young man's stepfather. Eventually he employed defendant after school, Saturdays and summers, as did neighbors. This continued until approximately a year ago when defendant obtained steady employment. Witness' personal contact with defendant since then has been only intermittent. Witness was then asked, "Now do you know what George Hobbs' general reputation is in the community for peacefulness?" Prosecution objected and took over the witness examining him for the purpose of laying a foundation for objection. On further examination by the prosecution, Mr. Wealtha testified many neighbors and acquaintances in the community had commented on how courteous and hard working defendant and his brothers were. Some 12 people had commented before defendant got into trouble on how well disciplined, well mannered and cooperative he was.

After this foundation, Mr. Wealtha was immediately asked by defense counsel his knowledge of George Hobbs' general reputation in the community for nonviolence,

honesty, integrity, and good citizenship. Objection to each question was sustained.

We find no error in the rulings of the trial court. Again an insufficient foundation was laid for such questions. No evidence was introduced showing comments in regard to these particular traits had ever been made, to say nothing of their number, place, time, duration or representative nature.

V. Mrs. Herman Olson, defendant's other character witness, testified she took the six Hobbs children, George included, into her home 10 years ago and raised them as if they were her own. She had lived in the Ellsworth, Randall, and Story County area for several years and had contact with various groups and townspeople. Witness was then asked, "Do you know what George Hobbs' general reputation is in the community for peacefulness?" Again prosecution objected and took over the witness examining her for the purpose of laying a foundation for objection. On examination by prosecution, witness testified all comments concerning defendant, that he was a good boy and had a good general reputation for peacefulness, were made after the robbery in question.

On motion, the court struck witness' testimony as to defendant's general reputation in the community for peacefulness. Objections to similar questions directed at the traits of nonviolence, honesty and integrity, and good citizenship, were also sustained. Essential foundation facts were lacking.

Evidence of defendant's general reputation introduced in an attempt to show the probability or nonprobability of defendant committing the crime charged must be based on declarations made by members of the community in which defendant moves or resides prior to the commission of the offense. This applies both to evidence offered by accused or by the State. State v. Kinley, 43 Iowa 294, 296; State v. Ward, 73 Iowa 532, 536, 35 N.W. 617, 619; State v.

Rowell, 172 Iowa 208, 216–217, 154 N.W. 488, 490–491; State v. Ferguson, supra, 222 Iowa at 1160–1161, 270 N.W. at 882; Wolf v. State, 89 Ind.App. 463, 166 N.E. 883, 885; People v. Willy, 301 Ill. 307, 133 N.E. 859, 864; People v. Rembowicz, 335 Ill. 604, 167 N.E. 797, 801; Clair v. Commonwealth, 267 Ky. 363, 102 S.W.2d 367, 369; Traxler v. State, 96 Okl.Crim.App. 231, 251 P.2d 815, 838; State v. Latham, 190 Kan. 411, 375 P.2d 788, 800–801; State v. Van Osten, 68 R.I. 175, 26 A.2d 858, 861; Brooks v. State, Miss., 52 So.2d 616, 619–620, cert. denied 342 U.S. 863, 72 S. Ct. 114, 96 L.Ed. 649; State v. Jackson, Mo., 373 S.W.2d 4, 7–8; State v. Iles, 201 La. 398, 9 So.2d 601, 609; Anderson v. State, 44 Ala.App. 388, 210 So.2d 436, 440; 29 Am.Jur.2d, Evidence, section 348, page 398; 22A C.J.S. Criminal Law § 677(2), page 709.

The citation to C.J.S., supra, contains this statement:

" * * * [E]vidence of character must be confined to proof of character or reputation at or prior to the commission of the offense, and must not be allowed to cover character after the commission of the offense or what was said after the offense as to accused's character either before or after the offense. This is true both as to evidence of good character offered by accused, and as to evidence of bad character offered by the state in rebuttal."

The courts reason declarations made by members of the community after the alleged offense are immaterial and have no bearing on defendant's propensity to commit the act charged. State v. Carson, Mo.App., 239 S.W.2d 532, 536; Traxler v. State, supra. The theory of reputation evidence concerning the defendant is that *before* he was accused of a stated crime his neighbors believed him incapable of committing such an offense, what they thought afterwards is immaterial. State v. Rowell, supra, 172 Iowa at 217, 154 N.W. at 491.

"* * * [I]t is obvious that after the charge has become a matter of public discussion, and partisan feeling on either side has had an opportunity to produce an effect, a false reputation is likely to be created,—a reputation based perhaps in part upon rumors about the very act charged * * *. The safeguards of trustworthiness [essential to many hearsay exceptions] are here lacking." 5 Wigmore on Evidence, Third Ed., section 618.

Wigmore suggests it would seem that a party might properly be allowed to invoke in his favor a good reputation "post litem motam" since the reasoning of many of the cases is directed against the risk of an unduly hostile reputation but states "it is generally agreed that a reputation at anytime *after a charge published*, or other controversy begun, is not admissible" and cites many cases in support of the general rule.

Mrs. Olson's testimony as to defendant's general reputation in the community for peacefulness was properly stricken. Her testimony based on comments made after the alleged robbery was inadmissible under the rule stated in State v. Rowell and cases from other jurisdictions cited supra.

Objection to questions directed at defendant's general reputation in the community for nonviolence, honesty and integrity, and good citizenship again were properly sustained for lack of proper factual foundation. There was no indication that comments in regard to these types of traits were made, nor their number, place, duration or representative character.

VI. Defendant's second assignment of error is based on the contention the court refused to permit him to pursue a line of questioning tending to establish his good reputation by negative evidence. That is, it was error to strike Gabrielson's testimony based on an acquaintance with defendant over a period of ten years when the witness had not heard anything about defendant's reputation in the community that he was not peaceful.

Defendant relies on State ex rel. Seeburger v. Pickett, 202 Iowa 1321, 1325, 210 N.W. 782, 783, where the court said "the best reputation is the one least talked about".

In State v. Scalf, supra, 254 Iowa at 989, 119 N.W.2d at 872, in referring to this quotation we said:

"[It] is appropriate, sound logic and good law when determining knowledge of a bad reputation. Lack of discussion may, as suggested, refute a claim of bad reputation or indicate a good reputation, * * *."

"An acquaintance extending over several years is certainly sufficient to qualify a witness to testify as to the good character of the accused. If having known the accused for several years such witness further testifies that he is of good character and that he never heard his character questioned and that the question of his character never was discussed outside of his own family, his evidence should be received. Affirmative testimony of express oral comments of the neighbors, friends and acquaintances of the accused, upon the reputation of the accused, is not always required. Evidence that the character of the accused had never been denied or doubted, or even discussed or spoken of among his acquaintances, though negative in form, is always admissible and often of the highest value." 1 Underhill Criminal Evidence, Fifth Ed., section 196.

In 1 Jones on Evidence, Fifth Ed., section 179, this appears:

"It has often and sensibly been recognized that reputation testimony should be received which is based not on knowledge of affirmative good report but on absence of report of bad reputation, where it is shown that misconduct would probably have been generally known in the community and that the witness would have heard expressions of bad character had they been circulating."

Wigmore says, "The absence of utterances unfavorable to a person is sufficient

basis for predicating that the general opinion of him is favorable. A witness to *good reputation* may therefore testify by saying that he has *never heard anything said against* the person." 5 Wigmore on Evidence, Third Ed., section 1614.

The same general principles worded somewhat differently appear in 29 Am. Jur.2d, Evidence, section 349 and 22A C.J.S., supra Criminal Law § 677(4).

" * * * This is permitted [the character witness' statement that he has heard nothing against defendant] upon assumption that, if no ill is reported of one, his reputation must be good. But this answer is accepted only from a witness whose knowledge of defendant's habitat and surroundings is intimate enough so that his failure to hear of any relevant ill repute is an assurance that no ugly rumors were about." Michelson v. United States, 335 U.S. 469, 478, 69 S.Ct. 213, 220, 93 L.Ed. 168, 175.

Returning to Wigmore, supra, we find this statement:

" * * * Moreover, so far as the answer 'I never heard his character discussed,' implies that the witness has not had opportunities for learning what the reputation was, he is not a qualified witness to reputation."

▆▆▆ From the authorities cited we deem the rule to be reputation testimony is admissible when offered by a defendant in a criminal case to put his character in issue as bearing on the probability or nonprobability of his guilt of the crime charged when the witness' knowledge of defendant's character is based on absence of reports of bad reputation, lack of public discussion or on the fact he has heard nothing against the defendant providing the witness is shown, by way of foundation, to have been in such position that he would have heard anything that was said concerning the person's character or reputation.

Defendant did not even approach such foundation requirement with Gabrielson.

His contention urged under this assignment cannot be sustained.

The case is

Affirmed.

All Justices concur.